Stewart et al. *v.* Hadley (White, Appellant).

Argued June 10, 1937. Before KEPHART, C. J., SCHAF-FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Walter Biddle Saul* and *B. D. Oliensis,* with them *Joseph D. Burke* and *Michael J. McManus,* for appellant.

*Wm. A. Schnader,* of *Schnader & Lewis,* with him *Gilbert W. Oswald,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, July 7, 1937:

This proceeding in equity, brought by Frank J. Willard, Receiver of Taxes of the City of Philadelphia, and by taxpayers of the city, against the City Treasurer and the City Controller, challenges the constitutionality of the Act of Assembly approved April 28, 1937, 475, amending the City Charter Act of June 25, 1919, P. L. 581, 53 PS Section 2901, and purporting to abolish the office of Receiver of Taxes and the Department of Receiver of Taxes in cities of the first class. The chancellor granted a preliminary injunction against defendants forbidding the carrying out of the provisions of the act. From the decree entered the City Controller appeals.

The act is entitled "An Act to amend the Act approved the twenty-fifth day of June one thousand nine hundred and nineteen (Pamphlet Laws 581) entitled 'An Act for the better government of cities of the first class of this Commonwealth' by abolishing the department of receiver of taxes and transferring its powers and duties to the department of city treasurer and abolishing the office of receiver of taxes."

An analysis of the body of the act brings out, what is, to say the least, an anomaly in legislation. Its purpose was to amend the first class city charter act. The department of receiver of taxes is stricken out of the act by deleting the words "department of receiver of taxes" as the 11th executive department of the city government and by repealing article XV relating to that department. Article XI is amended by adding a section charging the department of city treasurer "with the duty of *receiving taxes*" and other payments due the city, but nothing is said about the duty of collecting taxes. It is directed that the city treasurer "be charged by the controller with the full amount of all tax duplicates of the several wards and also with all other accounts placed in

his hands by the proper officer for collection." The treasurer is required to make "daily returns to the controller of all moneys paid and by whom paid together with all duplicates of tax receipts retained by the City Treasurer." It is provided that the treasurer may employ such additional clerical and other assistants as are necessary to perform the duties imposed on him and may purchase such mechanical equipment as is needed.

By section 4 of the amending act, "The office of receiver of taxes in cities of the first class is hereby abolished and the term of the receiver of taxes in office is hereby terminated on the effective date of this act"— May 1, 1937. Recalling that this act is one amending the city charter act, we will point out at this time, and advert to the matter later, that the office of receiver of taxes was not created by the city charter act and therefore an amendment to that act manifestly can have no effect upon the act creating the office, the Act of February 2, 1854, P. L. 21, (No. 16), Section 11, 53 PS Section 4831, or upon the office itself. Section 4 goes on to provide that "All books, papers, records and documents in the possession of the department of receiver of taxes are hereby transferred to the department of city controller." Nothing is said about his collecting the taxes. If by the transfer of the books, records and papers of the department of receiver of taxes to the city controller it was intended that he is to collect the delinquent taxes, what power must he exert to do it? It would strain the use of words beyond the breaking point to hold that the mere custodian of the books should be the collector of the accounts therein. Nothing is said anywhere in the amending act about who is to exercise the vastly important powers vested in the receiver of taxes; no mention is made of them. They are not lodged anywhere. It is further provided that "all supplies, materials and equipment are hereby transferred to the board of revision of taxes on the effective date of this act." This board is not a tax collecting body at all.

We will now look into the charter act so far as it relates to the receiver of taxes and the department of receiver of taxes. These subjects are covered by article XV of the act. Section 1 of this article provides: "There shall be a department of receiver of taxes of which the receiver of taxes shall be the head. He shall be elected and give bond as now provided by law and shall hold office for a term of four years and until his successor is elected and qualified." He was an existing officer, in an existing office, not brought into being by the charter act, but by prior laws, and, as such, imported into the charter act.

Section 2 states "All officers charged with the duty of collecting taxes and the receipt and collection of funds derived [from other sources] shall be attached and subordinate to this department, and be subject to its supervision, control and direction. . . ." The duty of collecting taxes was fixed by other statutes, as will hereafter appear.

Section 3 directs that the receiver of taxes shall be charged by the controller with the full amount of all tax duplicates and with other accounts placed in his hands and shall make daily returns to the controller.

These are the only provisions of the charter act covering the receiver of taxes and the department of receiver of taxes. We must look elsewhere for the creation of the office and for the designation of the receiver's powers and duties. We proceed to examine that legislation.

As already pointed out, the receiver of taxes was brought into being as an official by the Act of February 2, 1854, P. L. 21, (No. 16), Sec. 11, 53 PS Sec. 4831, which is a supplement to the act incorporating the City of Philadelphia. It directs that he shall be elected on a day named and "shall collect and receive all taxes and public assessments payable and receivable within the limits of the said city, and for that purpose shall have and exercise all the powers conferred by law in that be-

half." The Act of April 21, 1855, P. L. 264, Sec. 14, 53 PS Sec. 4851, provides for certain duties to be performed in making out and sending bills to taxpayers. The Act of May 16, 1857, P. L. 549, Sec. 2, 53 PS Sec. 4925, fixes a method by which the receiver of taxes can obtain from district surveyors proper descriptions and measurements of land against which he is about to proceed for the recovery of registered taxes. The Act of March 30, 1859, P. L. 302, Sec. 1, 53 PS Sec. 5002, authorizes the receiver to refund taxes erroneously paid. The Act of May 23, 1874, P. L. 230, Sec. 5, 53 PS Sec. 3472, requires him to publish a detailed statement of all delinquent taxpayers, and the Act of April 19, 1883, P. L. 9, (No. 10) 53 PS Sec. 4916 et seq., requires him to prepare a registry of delinquent taxes and to proceed for their collection by distraint or otherwise either out of the personal property on the premises or the personal or real estate of the owner wherever found. It empowers the *receiver of taxes* to distrain and levy upon and sell goods, chattels or personal property, found on any premises on which the taxes are delinquent, or upon those of the owner wherever found, whether in his possession, or in that of others, and to levy upon the property of tenants and to collect the rent due, to proceed against the delinquent by action or by lien, to stay sheriff's sales or purchase the property in behalf of the city. No one save the receiver of taxes can exercise the powers provided by this act, except deputies whom he shall appoint, who thereupon have all the powers to collect delinquent taxes which are conferred upon him. By the Act of June 8, 1907, P. L. 520, 53 PS Sec. 4891, which provides for the establishment of branch offices for the payment of taxes, the receiver is empowered to appoint local receivers and to require bonds from them. The Act of June 17, 1913, P. L. 507, 72 PS Sec. 4881, covers the collection of personal property taxes imposed by that act by distraint. It is required by the Act of July 21, 1913, P. L. 863, Sec. 1, 53 PS Sec. 4874, that the

receiver of taxes shall close his books on the thirty-first day of December and immediately thereafter, shall proceed to register all delinquent taxes, and, on the twenty-fifth day of January place the register in the hands of the collector of delinquent taxes. Under the Act of May 20, 1921, P. L. 936, Sec. 1, 53 PS Sec. 4942, the receiver of taxes is required to furnish upon application certificates of all taxes and claims which are a lien on real estate.

Unless there is a receiver of taxes these acts are inoperative. The general tax lien Act of May 16, 1923, P. L. 207, 53 PS Sec. 2021, relied upon by appellant, does not supply the powers which the acts applying to the receiver of taxes confer, without which the collection of taxes would be most seriously hampered, in many instances could not be made. There would, of course, be the liability for taxes but the authority to enforce the liability would be lacking.

None of the powers and duties set forth in the foregoing statutes is mentioned in the Charter Act and that is the only act which the statute we are considering purports to amend. These powers and duties cannot be exercised by any one except the receiver of taxes. None of them is or can be conferred on the treasurer or controller by the amending act, as it does not pretend to amend any of these power- and duty-conferring enactments. While the charter act denominated the receiver of taxes (then an existing official by virtue of other acts) as head of the department, it did not interfere with any of the duties prescribed under the preëxisting laws, which were separate, distinct and apart from those mentioned in the charter act; it left the powers and duties just as firmly fixed in the receiver as though two persons were filling separate offices. The receiver of taxes, as such, is not a creature of the charter act. The amending act speaks of the department of receiver of taxes which was devoid of necessary powers,—they were vested in the receiver.

Just how important the receiver of taxes is in the municipal body should be pointed out. He is the heart of the body. He collects the money which is the life blood of the organism and passes it on to be circulated throughout the entire body without which it could not function. He collects not only city taxes, but also school taxes, county taxes, water rents and other moneys payable to the governmental subdivisions within the territorial limits of the city and county. During 1936 he collected a total of $90,565,148.37. On April 1, 1937, taxes for the current year remained to be collected in the following amounts: City taxes $16,561,199.46; school taxes $9,296,547.50; personal property taxes, $3,637,-693.43; water rents $4,268,866.91. The amount of delinquent taxes outstanding as of March 1, 1937, was $34,584,693.71 and delinquent water rents $1,800,000. In the amending act there is a complete vacuum as to the collection of taxes for the year 1937. The controller cannot charge the city treasurer with these taxes. They have already been charged to the receiver; 1938 taxes will be the first to be charged against the city treasurer if this act were to be sustained.

The amending act does not attempt to transfer to any one the powers and duties of the receiver of taxes. It purports to confer on the department of city treasurer power to *receive* taxes. If it was the purpose of the legislature that the duty of *collecting* taxes should devolve upon the department of city controller, the only language of the amending act which by any stretch of construction would lend color to the thought would be that of the fourth section providing that the books, papers, records and documents in the possession of the department of receiver of taxes are transferred to the department of city controller. This would be a flimsy foundation indeed on which to rest the power to collect, with all the incidents connected with this duty, especially when no reference whatever is made to the acts conferring the powers. It would be a reckless controller who

would attempt to exercise these drastic powers with the law in the muddled state in which the amending act would place it. Particularly is this so when notice is taken that the title of the amending act gives no hint that the department of city controller is to take over any of the functions of the receiver of taxes.

There is a manifest difference between receiving taxes and collecting them. When the course of the amending act through the legislature comes to be viewed, a strange situation develops. On the final reprint of the bill, the one signed by the Governor, an amendment was made in committee by which the words "collecting taxes" following the words "duty of" were stricken from the bill, so that as finally enacted it reads "duty of receiving taxes." This certainly gives ground for the contention that no one would have the duty of collecting taxes not voluntarily paid or the power to compel payment. This would create a most serious situation for the city particularly in the collection of delinquent taxes, of which $34,000,000 are outstanding. This alteration of the text would seem to have been deliberately made. The amending act makes no provision whatever for the collection of delinquent taxes. It is asking too much to believe that delinquent taxpayers would not avail themselves of this condition in the law.

It is obvious from the most casual reading of the title of the amending act that it relates to two distinct subjects: (1) The amendment to the city charter act as specified in the title and (2) the abolition of the office of receiver of taxes, which could not be done by an amendment of the city charter act because that act did not create the office. As heretofore pointed out, the office was created by the Act of 1854. Nothing is said in the title about the controller or his duties, yet if some of the implications of the arguments for the constitutionality of the act were to be adopted, he would be vested with important powers and responsibilities.

In *Provident Life & Trust Co. v. Hammond,* 230 Pa.
407, 414, 79 A. 628, we said: "We cannot look beyond
the title and into the body of the bill to determine the
validity of the legislation. The title must speak for it-
self and clearly declare the legislative purpose. The in-
vestigator has the right to rely solely on the title with-
out scrutinizing the body of the bill for information as
to the subject of the proposed legislation. . . . If the
title is defective in that it contains more than one sub-
ject or only one subject which is not clearly expressed,
the law which results from the passage of the bill con-
travenes the constitution and is void." What was fur-
ther said in this opinion (p. 417) is apposite in consid-
ering the act before us: "The only possible way in which
the Act of 1893 could be identified as the one to be
amended by the Act of 1907 would be to search the
pamphlet laws from 1879 to 1893 and compare the body
of the amendatory act with the other legislation enacted
during those fourteen years. This is what the statute
clerk in the office of the secretary of the Commonwealth
did when he tried to find the act proposed to be amended
in order to insert the citation in the marginal note, and
he testified that he 'had a great deal of difficulty' in find-
ing it. It is scarcely necessary to suggest that when
such an investigation is required to find the subject of a
bill, the constitutional mandate that it be 'clearly ex-
pressed' in the title is not complied with. Such a title
would not enable the investigator to find the subject be-
fore the bill became a law." In *Yardley Mills Co., Inc.,
v. Bogardus,* 321 Pa. 581, 185 A. 218, we held an act un-
constitutional because the title contained more than one
subject in that it relieved canal companies under certain
circumstances from the duty of maintaining their canals
and in another section provided that the canal company
having fulfilled the conditions upon which they might be
relieved from the duty of maintaining their canals
might dispose of the waters and of the canal lands and

other appurtenant property, and in a third section authorized the Commonwealth to acquire and sell or otherwise dispose of any portion of the canal lands not necessary for highway purposes and to deposit the proceeds in the motor license fund. "Provisions which have no proper legislative relation to each other and not part of the same legislative scheme, may not be joined in the same act": *Payne v. School District of Coudersport Boro.*, 168 Pa. 386, 389, 31 A. 1072; *Com. v. Humphrey*, 288 Pa. 280, 136 A. 213.

The title of the act relates to two unrelated subjects. One is the amendment of the city charter act and the other is the abolition of an office not created by the city charter act and the incumbent of which performs vitally important duties for the city, the county and the school district within the territorial limits of the city.

No specific argument is submitted by appellant's able counsel to meet the contention of appellees that the act is unconstitutional because the title contains two subjects. We take for granted that this is so because the argument cannot be made. If the title does contain two subjects, and we think it does beyond question, necessarily the statute falls because of the constitutional mandate that it shall contain only one.

Under our organic law the legislature is forbidden to pass any bill containing more than one subject which shall be clearly expressed in its title. This mandate in passing the amending act the legislature did not heed, and, therefore, the act is unconstitutional and void. "An act of assembly is void because the title to the bill which by legislative sanction becomes a law offends the constitutional provision": *Provident Life & Trust Co. v. Hammond*, supra, at p. 418.

The decree of the court below is affirmed, with directions to make the injunction permanent. Costs to be paid by appellant.