554 A.2d 998

Pennsylvania Association of Rental Dealers, Petitioner *v.* Commonwealth of Pennsylvania, and Robert Casey, Respondents.

Argued December 14, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, BARRY, COLINS, PALLADINO, MCGINLEY and SMITH.

*J. Samuel Choate, Jr., Reichler, Applebaum & Wippman,* with him, *Arthur L. Pressman, Abraham, Pressman & Bauer, P.C.,* and *James P. Nehf, Filler & Nehf, P.C.,* for petitioner.

*Gregory R. Neuhauser,* Senior Deputy Attorney General, with him, *John G. Knorr, III,* Chief Deputy Attorney General, Chief, Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE BARRY, February 22, 1989:

The Pennsylvania Association of Rental Dealers (PARD) has filed an equitable action in our original jurisdiction seeking, *inter alia,* a declaratory judgment that Act No. 1988-15 (Act 15), Act of February 26, 1988, P.L. 78, Act No. 1988-15, *amending* Act of October 28, 1966, P.L. 55, Special Sess. No. 1, *as amended,* 69 P.S. §§1101-2303 (Supp. 1988) (Installment Sales Act), was passed by the Legislature in a manner which violated various sections of the Pennsylvania Constitution. Named as respondents are the Commonwealth and its Governor, the Honorable Robert Casey. As there is no dispute concerning the facts, both sides have moved for

summary judgment. For the reasons that follow, we believe PARD's motion for summary judgment must be granted.

PARD is an unincorporated association of companies which lease consumer goods and appliances to customers. Included in a great number of the leases are provisions which give the customer the option to purchase the items at the expiration of the lease. Prior to the passage of Act 15, these transactions whereby a customer could purchase the goods following the expiration of the lease were not covered by the Installment Sales Act. Act 15 amended various sections of the Installment Sales Act so that these transactions would come within its purview.

Act 15's path through the Legislature is the subject of PARD's challenge. Again, these facts are undisputed. The Act originated as Senate Bill No. 167 and dealt with the payment by farmers of estimated taxes; it was referred to the Senate Finance Committee on January 23, 1987. The committee reported the bill to the full Senate which considered the bill on February 4, 1987, March 11, 1987 and finally passed it without amendment five days later.

Senate Bill 167 was then referred to the House Finance Committee two days later; that body reported the bill to the full House which gave the bill its first consideration on June 15, 1987. Two days later, the bill was referred to the House Appropriations Committee which reported an amended bill to the full House on June 22, 1987; the amended bill, which received consideration that day by the House, deleted all of the language dealing with farmers' estimated tax payments and in its place the new language provided for financial assistance to local taxing authorities. On July 2, 1987, the amended Senate Bill 167 was then referred to the House Rules Committee. That body reported yet a different bill to the full

House on February 22, 1988. These amendments deleted all language concerning assistance to local taxing authorities and now contained the language which eventually became Act 15. The following day the House gave Senate Bill 167 final consideration. The next day, Senate Bill 167 was returned to the Senate which without referring it to committee concurred in the bill. Governor Casey signed the bill two days later.

PARD argues that this factual scenario shows that the enactment process violated Sections 1, 2 and 4 of Article III of the Pennsylvania Constitution. Section 1 provides that "[n]o law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose." Section 2 prohibits the consideration of a bill "[u]nless referred to a committee. ..." Finally, Section 4 provides in relevant part that "[e]very bill shall be considered on three different dates in each House." The respondents argue that the whole controversy is non-justiciable. In the alternative, they argue that the above cited provisions of the Pennsylvania Constitution were not violated.[1]

The Commonwealth's argument that the whole matter is non-justiciable is premised on Article II, Section 11 of the Pennsylvania Constitution and this Court's recent decision in *Ritter v. Commonwealth,* 120 Pa. Commonwealth Ct. 374, 548 A.2d 1317 (1988). Section 11 gives each House the "power to determine the rules of its proceedings." In *Ritter,* we held that the existence of this power rendered an alleged Article III, Section 2 violation non-justiciable as a political question. For the following reasons, the Commonwealth's argument is mistaken.

---

[1] Respondent Casey argues that the action against him should be dismissed because he is not a necessary party. Because of our resolution of the other questions posed, we need not address this argument.

It would be incorrect to argue that Article II, Section 11 rendered non-justiciable all questions concerning alleged violations of Article III. The Supreme Court was succinct in stating, "Specific limitations on the Legislature's power to determine its internal operating procedures are imposed elsewhere in the Constitution. See Pa. Const. art. III, §§1-13. These limitations are judicially enforceable." *Sweeney v. Tucker*, 473 Pa. 493, 514-16, 375 A.2d 698, 708-09 (1977) (footnote omitted).

In *Ritter*, a bill concerning underage drinking originated in the House, and after being considered three times there was sent to the Senate. While in the Senate, amendments were passed which dealt with the funding of abortions; the bill was then returned to the House which had a rule prohibiting House amendments to Senate amendments of House bills which are returned to the House for concurrence. The House, by majority vote, temporarily suspended its rules, deleted a portion of the bill which had been added in the Senate and concurred in the remainder (which still included the abortion provisions). After the Governor signed the bill into law, seven members of the House filed an action in our original jurisdiction, alleging, *inter alia*, that the procedure described violated Article III, Section 2 of the Pennsylvania Constitution.

Relying upon Article II, Section 11, we held that this challenge was non-justiciable. As President Judge CRUMLISH stated:

> The pleadings, the briefs and stipulations herein lead to the conclusion that petitioners request this Court to interfere in a solely legislative matter. Those petitioners who were in attendance during the votes and discussions on amendments and concurrence had the opportunity to challenge Act 31 or parts thereof, procedurally and substan-

tively during that period. Moreover, petitioners did not bring a constitutional challenge to Act 31 pursuant to House Rule 4.

*Ritter* at 381, 548 A.2d at 1320. We believe that Ritter has no application to the present case because PARD does not consist of individual legislators who had an opportunity to challenge the procedures used during the legislative process. Because Ritter is inapplicable, the Commonwealth's argument that the whole matter is non-justiciable is not well founded.

In *Parker v. Commonwealth*, 115 Pa. Commonwealth Ct. 93, 540 A.2d 313 (1988), we held that constitutional challenges pursuant to Sections 2 and 4 of Article III were justiciable. There, a bill originating in the House was passed and sent to the Senate. That bill dealt with the creation of an Agricultural Product Development Commission and had an expressed purpose of assisting Pennsylvania agriculture. The Senate deleted all of the House language and replaced it with a bill dealing with seasonal workers. Upon return, the House concurred and the bill was signed into law. Just as in the present case, that bill was challenged because it allegedly had not been considered by a committee of the House nor had it been considered three times in the House.

In deciding that the act had not been passed in violation of either Section 2 or 4, we stated:

> The rule, as followed by other jurisdictions, is that an amended bill need not be referred to committee or considered on three separate days in the House from which the bill which was amended originated, *if the amendments are germane to, and do not wholly change, the general subject of the bill. ...*

> The general subject of the version of House Bill 1042 that was sent to the Senate for approval

was, ... agricultural business in the Common-
wealth, the general purpose being the increase of
the impact of said business. It is the opinion of this
Court that, by amending a bill to provide for what
is in effect an unemployment compensation tax
advantage to companies engaged in canning and
freezing of fruits and vegetables, the Senate did
not change the subject matter of said bill. By
reducing the unemployment compensation tax
rate for seasonal fruit and vegetable food process-
ing operations in the Commonwealth, other fruit
and vegetable food processing operations may be
attracted into conducting business in the Com-
monwealth.

*Parker* at 122-3, 540 A.2d at 328-29 (emphasis added)
(citations omitted).

*Parker* was the first Pennsylvania case to apply the
"germaneness" test to Article III, Sections 2 and 4 chal-
lenges. That is not to say that the concept was not
recognized in Pennsylvania. Former Justice WILLIAM
HUTCHINSON of the Pennsylvania Supreme Court, him-
self a member of the Legislature before being elected to
that court, has recognized the existence of such a con-
cept. "The permissible scope of amendments to a bill has
always been extremely broad and the freedom to compro-
mise in conference is a *sine qua non* of the legislative
process. Essentially, however, the legislature has ad-
hered to the requirement that all amendments be ger-
mane." *Consumer Party of Pennsylvania v. Common-
wealth,* 510 Pa. 158, 188, 507 A.2d 323, 338 (1986)
(concurring opinion by HUTCHINSON, J., joined by PAPA-
DAKOS, J.). We therefore must apply the test of *Parker* to
decide if Sections 2 and 4 were violated in the passage of
Act 15.

The present bill initially considered on three occasions in the Senate, as previously mentioned, dealt with payments of estimated taxes by farmers. The bill in which the Senate concurred upon return from the House included transactions of PARD members described earlier within the purview of the Installment Sales Act. In our view, the latter is not germane to the former. Rather, the amendments finally passed by the House wholly changed the original bill. Because the Senate neither referred the amended bill to committee nor considered it three times, both Sections 2 and 4 of Article III have been violated. *Parker*.

The Commonwealth argues that the amendments were germane as both bills affect the economic well being of the Commonwealth. To take such a broad view of the germaneness test would, in our view, render that test meaningless. We do not take lightly the action of declaring Act 15 unconstitutional, for we are ever mindful of the deference owed to co-equal branches of government. Where, however, the Legislature has violated a section of Article III in passing legislation, we must fulfill our duty of interpreting the Constitution and where need be, as here, hold that Act 15 has been passed in an unconstitutional fashion. *Accord Scudder v. Smith*, 331 Pa. 165, 200 A. 601 (1938).[2]

## ORDER

Now, February 22, 1989, the petitioner's motion for summary judgment is granted and it is hereby declared that the Act of February 26, 1988, P.L. 78, Act No. 1988-15, is unconstitutional. Respondents' motion for summary judgment is denied.

---

[2] Because of our resolution of PARD's claims under Sections 2 and 4 of Article III, we need not address PARD's argument that Article III, Section 1 was violated.