NORTH–CENTRAL PENNSYLVANIA TRIAL LAWYERS ASSOCIATION by John M. Humphrey, Esq., Trustee ad Litem and John M. Humphrey, Esq., Individually, Petitioners,

v.

Honorable C. Michael WEAVER, Secretary of the Commonwealth of Pennsylvania and Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued April 1, 2003.
Decided June 18, 2003.
As Amended June 25, 2003.

Clifford A. Rieders, Williamsport, for petitioners.

Amanda L. Smith, Harrisburg, for respondents.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge SMITH–RIBNER.

Honorable C. Michael Weaver, Secretary of the Commonwealth of Pennsylvania, and the Commonwealth of Pennsylvania (together, the Commonwealth) have filed preliminary objections to a complaint filed in this Court's original jurisdiction by the Petitioners North–Central Pennsylvania Trial Lawyers Association (NCPaTLA) and John M. Humphrey, Esq., individually, seeking a declaration that the Act of October 17, 2002, No.2002–127, P.L. 880 (Act 127), relating in part to venue in medical professional liability actions, is unconstitutional. The Commonwealth asserts that NCPaTLA lacks standing to bring this suit and that Petitioners fail to state a claim upon which relief may be granted because Act 127 does not offend any of the constitutional provisions cited.

I

When Senate Bill 138 (SB 138) was introduced in the Senate on January 26, 2001 its title was: "AN ACT Amending Title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, providing for compensation of multicounty investigating grand jurors and reimbursement to counties." After the Senate Appropriations Committee considered the bill and removed the reference to reimbursement in the title, the Senate considered it for a third time and passed it on February 12, 2001. SB 138 was referred to the House Judiciary Committee on February 14, 2001. It was reported as committed and first considered by the House of Representatives on November 13, 2001. Second consideration occurred on November 14, 2001. The bill was re-referred to the House Judiciary Committee. It was reported as committed and re-referred several times before being amended by that committee to add provisions relating to venue in medical professional liability actions and being re-reported on October 1, 2002.

The amendments proposed a new Section 5101.1 of the Judicial Code, relating to venue in medical professional liability actions, and a corresponding reference in Section 931(c), 42 Pa.C.S. § 931(c), relating to venue and process. Proposed Section 5101.1(a) declared as a policy the need to change venue requirements for medical professional liability actions, and Section

5101.1(b) provided: "Notwithstanding any other provision to the contrary, a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in the county in which the cause of action arose." The title at this time was: "AN ACT Amending Title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, providing for venue and for compensation of multicounty investigating grand jurors."

On third consideration in the House, on October 7, 2002, SB 138 was further amended to add language to Section 5981, 42 Pa.C.S. § 5981, directing the media to use significant restraint and caution in revealing information that would disclose the names or addresses of child victims of crimes or witnesses, and also to make significant changes to provisions of the Act known as the Pennsylvania "Megan's Law," Sections 9795.2(a) and (c), 9795.3 and 9799.1(4) of the Sentencing Code, 42 Pa.C.S. §§ 9795.2(a) and (c), 9795.3 and 9799.1(4), relating to the registration of offenders and sexually violent predators

and to information required to be supplied by a sentencing court to an offender, by an offender to the Pennsylvania State Police and by the State Police to local police departments.[1] SB 138 was passed in the House on October 7, 2002, and it was referred to the Senate Rules Committee and re-reported, as committed, on October 8. The Senate concurred in the House amendments on October 9, 2002, and SB 138 was signed in both houses on that date. The Governor signed it into law on October 17, 2002.

On November 13, 2002, Petitioners filed the present petition for review in the nature of a complaint in this Court's original jurisdiction pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541. They requested a declaration that Act 127 is unconstitutional, null and void, that it violates the equal protection mandates of the federal and state Constitutions and that the actions of the legislature and the Governor were beyond their jurisdiction or permissive authority, and they sought an order enjoining codification of Act 127.[2] The Commonwealth

---

1. The title of SB 138 at this time was:

 AN ACT

 Amending Title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, further providing for declaration of policy regarding child victims and witnesses, for original jurisdiction and venue of courts of common pleas, for expenses for investigating grand juries and trials and for compensation and travel allowance for jurors; providing for venue in medical professional liability actions; and further providing for registration procedures and applicability, for sentencing court information and for duties of the Pennsylvania State Police.

2. The complaint avers as follows: Count I—Violation of Article V, Section 10(c) of the Pennsylvania Constitution, which provides that the Supreme Court shall have the power to prescribe general rules governing practice and procedure and the conduct of all courts, and Article III, Section 23, which provides

that the power to change venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law; Count II—Violation of Article III, Section 1 of the Constitution, which provides that no bill shall be so altered or amended on its passage through either House as to change its original purpose; Count III—Violation of Article III, Section 3, which provides that no bill shall be passed containing more than one subject, which shall be clearly expressed in its title; Count IV—Violation of Article III, Section 4, which provides in part that every bill shall be considered on three different days in each House and that all amendments shall be printed for the use of the members before the final vote is taken; and Count V—Violation of the Fourteenth Amendment to the United States Constitution, which provides in part that no State shall deprive any person within its jurisdiction of due process of law or of equal protection of the laws, of Article I, Section 26 of the Penn-

**554** 

filed preliminary objections as described above.[3]

## II

 The Court turns first to the contention that NCPaTLA lacks standing. To have standing to seek declaratory relief a plaintiff must possess an interest that is direct, substantial and present, as contrasted with a remote or speculative interest. *Pennsylvania Gamefowl Breeders Ass'n v. Commonwealth*, 533 A.2d 838 (Pa. Cmwlth.1987), *reaff'd after reconsideration*, 538 A.2d 645 (Pa.Cmwlth.1988). An interest is "substantial" when there is a discernible adverse effect to an interest of the aggrieved individual that differs from the abstract interest of the public generally in having others comply with the law; it is "direct" when the aggrieved person can show a causal connection between the alleged harm to his or her interest and the matter complained of; and it is "immediate" when the causal connection is not too remote. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). An association, as a representative of its members, may have standing to bring a cause of action even in the absence of injury to itself; the association must allege that at least one of its members is suffering immediate or threatened injury as a result of the challenged action. *Pennsylvania School Boards Ass'n v. Commonwealth Ass'n of School Administrators, Teamsters Local 502*, 696 A.2d 859 (Pa.Cmwlth.1997).

The Commonwealth cites as instructive the concededly non-precedential case of *In re Association of Trial Lawyers of America*, 228 N.J.Super. 180, 549 A.2d 446 (App. Div.1988). There the New Jersey Superior Court concluded that a chapter of the Association of Trial Lawyers of America (ATLA) did not have standing to challenge a new act with substantive and procedural provisions relating to products liability actions. The court rejected the argument that the law regulated the conduct of attorneys, stating that the new law might affect the income of attorneys through a possible reduction in contingent fee cases or make the practice of law more burdensome, but it concluded that recognizing standing on this basis would open the floodgates to needless litigation. The Commonwealth argues that Act 127 does not affect associational rights or injure attorneys in any way; it simply directs where actions may be brought.

Petitioners cite the holding of *Lawless v. Jubelirer*, 789 A.2d 820 (Pa.Cmwlth.), *aff'd*, 571 Pa. 79, 811 A.2d 974 (2002), in which the Court held in the alternative that the petitioners, as public officials, had taken an oath to defend the Constitution of Pennsylvania and that they had standing on that separate basis to bring their constitutional challenge to the president *pro tempore* of the Senate's serving simultaneously as Lieutenant Governor of the state. Petitioners further note that *Lawless* was based upon the holding in *Bergdoll v. Kane*, 694 A.2d 1155 (Pa.Cmwlth.1997),

sylvania Constitution, which provides that the Commonwealth and political subdivisions shall not deny any person any civil right or discriminate against any person in the exercise of any civil right, and of Article I, Section 11, which provides that all courts shall be open and that every person for an injury done to his or her lands, goods, person or reputation shall have remedy by due course of law.

**3.** In ruling on preliminary objections courts must decide whether the law says with certainty that, based upon the factual averments, no relief is possible. *P.J.S. v. Pennsylvania State Ethics Commission*, 669 A.2d 1105 (Pa. Cmwlth.1996). Any doubt must be resolved in favor of the non-moving party by refusing to sustain the preliminary objections. *Envirotest Partners v. Department of Transportation*, 664 A.2d 208 (Pa.Cmwlth.1995).

*aff'd,* 557 Pa. 72, 731 A.2d 1261 (1999), where the Court determined that attorneys, who had taken an oath to defend the Constitution, and the Pennsylvania Bar Association had standing to challenge a ballot question proposing changes to the Constitution relating to the conduct of criminal trials.

The Court agrees that Petitioners have standing to maintain this action. In the petition for review NCPaTLA alleged that a number of its members are members in good standing of the bar of Pennsylvania who engage in medical malpractice litigation and who will be directly and substantially affected by the changes in the venue rules contained in Act 127 and whose clients will be directly and substantially affected. The members of NCPaTLA and Attorney Humphrey individually will be adversely affected by the requirements of Act 127 as applied to cases in rural communities whose venire are substantially composed of employees of large medical institutions. Provisions that limit the choice of venue otherwise available have a direct effect on attorneys' practice of law and on their ability to advocate and represent the interests of their clients.

### III

■ The Commonwealth first argues that the enactment of Act 127 did not violate Article III of the Constitution. Article III, Section 1, relating to the passage of laws, provides: "No law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose." Article III, Section 2, relating to reference to committee and printing, states: "No bill shall be considered unless referred to a committee, printed for the use of the members and returned therefrom." Article III, Section 3, relating to form of bills provides: "No bill

shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof." Finally, Article III, Section 4, relating to consideration of bills, provides in part: "Every bill shall be considered on three different days in each House. All amendments, made thereto shall be printed for the use of the members before the final vote is taken on the bill...."

Petitioners state that Article III provisions were adopted in the Constitution of 1874 to counter evil practices that had crept into the process of legislating and to adopt a form of due process of lawmaking. *See Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986). They argue first that the original subject matter of SB 138 was so altered by the amendments adding provisions relating to venue in medical professional liability cases and to changes to Pennsylvania's "Megan's Law" that Article III, Section 1 was violated.

In *Consumer Party* the bill at issue was introduced in the Senate with a title reflecting a subject matter of providing for the filling of vacancies in certain circumstances in counties of the third to eighth class. When the Senate did not agree to amendments made by the House, the bill was sent to a conference committee, from which it was reported with a new title reflecting that it now related to establishing salaries and compensation of various public officials. Petitioners note that the Supreme Court referred to the nature of the conference committee procedure as a search for consensus and its integral role in the legislative process. They argue that the court interpreted Article III, Section 1 too narrowly, but in any event they stress

that the present case does not involve the conference committee procedure.[4]

A related argument is Petitioners' contention that Act 127 violates Article III, Section 3, which in general requires each bill to have a single subject clearly expressed in its title. They contend that the single-subject mandate limits the content of bills and that the title mandate requires disclosure of the content. Petitioners refer to a statement in *Stewart v. Hadley,* 327 Pa. 66, 193 A. 41 (1937), that provisions which have no proper legislative relation to each other and are not part of the same legislative scheme may not be joined in the same act. They assert that the topics of grand juries and of tort reform disguised in a venue rule are not part of the same legislative scheme and that Article III, Section 3 should be interpreted more strictly when legislation was not originally drafted to include a range of matters within a broad subject.

Regarding Article III, Section 1, the Commonwealth stresses that in *Consumer Party,* 510 Pa. at 181, 507 A.2d at 335, the Supreme Court observed:

> We have stated that the purpose sought to be achieved by Article III, section 1 was to put the members of the General Assembly and others interested on notice so that they may act with circumspection. *Scudder v. Smith,* [331 Pa. 165, 200 A. 601 (1938)]. Here the bill in final form, with a title that clearly stated its contents, was presented to each house for its consideration and adoption.

Under these circumstances there is no basis for sustaining a challenge under Article III, section 1.

As for Article III, Section 3, it has been held that a violation occurs only when the legislators and the public were actually deceived as to an act's contents at the time of passage or the title on its face is such that no reasonable person would have been put on notice as to contents. *In re Commonwealth, Department of Transportation,* 511 Pa. 620, 515 A.2d 899 (1986).[5] The title of SB 138 in final form, *see* n.1 above, reflected the changes and put all those interested on notice of its contents.

In regard to Article III, Section 1 and Article III, Section 3, the Commonwealth argues that amendments made to SB 138 were germane to the subject matter. The Commonwealth points out that the courts have upheld statutes against attack under Article III, Section 1 by linking amendments to a common overall subject matter. In *Fumo v. Pennsylvania Public Utility Commission,* 719 A.2d 10 (Pa.Cmwlth. 1998), where a House bill that originally concerned regulation of taxi cabs was amended in the Senate to include extensive provisions relating to deregulation of generation of electricity, the Court held that there was no clear violation of Article III, Section 1 because the title as amended was not misleading nor a violation of Article III, Section 3 because both aspects of the law involved amendments to the Public Utility Code, 66 Pa.C.S. §§ 101–3316.

---

4. Petitioners argue that this Court sustained an Article III, Section 1 challenge in *Pennsylvania Ass'n of Rental Dealers v. Commonwealth,* 123 Pa.Cmwlth. 533, 554 A.2d 998 (1989). In that case, however, the Court sustained a challenge based upon violation of Article III, Sections 2 and 4, and it therefore expressly declined to rule on the Article III, Section 1 issue. *See Pennsylvania Ass'n of Rental Dealers,* 554 A.2d at 1002 n. 2.

5. The Court notes that *In re Commonwealth, Department of Transportation* concerned a challenge to the title of an act, and the Supreme Court stated that one seeking to declare a title unconstitutional under Article III, Section 3 must show either actual deception or that no reasonable person would be put on notice as to the act's contents.

In *Ritter v. Commonwealth*, 120 Pa. Cmwlth. 374, 548 A.2d 1317 (1988), *aff'd*, 521 Pa. 536, 557 A.2d 1064 (1989), an act that originally concerned only underage drinking was amended to change various chapters of the Crimes Code, then 18 Pa. C.S. §§ 101–9183. The changes included providing for rights of a district attorney in prisoner litigation, providing additional penalties for underage drinking and sale of alcohol or drugs to minors and penalties for scattering rubbish and regulating matters relating to performance and funding of abortions. The Court stated that the permissible scope of amendments is broad and found no Article III, Section 1 violation. The Court readily concluded that the act embraced a single subject under Article III, Section 3, i.e., amendments to the Crimes Code. Under these precedents the Court agrees with the Commonwealth that SB 138 as finally amended had a clear and not misleading title and that its provisions related to a single subject, namely, amendment of the Judicial Code.[6]

 Petitioners also argue a claim of violation of Article III, Section 4, asserting that the venue provision was in essence a separate bill, not an amendment to the juror compensation bill, because they view it as having a distinct and non-germane purpose and subject. They stress that in *Parker v. Department of Labor and Industry*, 115 Pa.Cmwlth. 93, 540 A.2d 313, 328 (1988), *aff'd*, 521 Pa. 531, 557 A.2d 1061 (1989), this Court adopted the rule that "an amended bill need not be referred to committee or considered on three separate days in the House from which the bill which was amended originated, if the amendments are germane to, and do not wholly change, the general subject of the bill." In *Parker* a bill that originally established an agricultural product development agency was amended to address unemployment compensation for seasonal workers. The Court concluded that the amendments were designed to foster agricultural business in the Commonwealth and hence were germane to the original subject. Similarly, in *Pennsylvania School Boards Ass'n, Inc. v. Commonwealth Ass'n of School Adm'rs, Teamsters Local 502*, 569 Pa. 436, 805 A.2d 476 (2002), a bill that originally concerned three individual, specialized schools and certain executive positions was amended to provide for collective bargaining and binding arbitration for certain school administrators in cities of the first class. The Supreme Court concluded that the amendments did not wholly change the general subject of the bill, which was to transform various aspects of school administration. Under this standard, the Court agrees that the amendments to SB 138, affecting administration of justice under the Judicial

6. The Court recently upheld an Article III, Section 3 challenge in *DeWeese v. Weaver*, 824 A.2d 364 (Pa.Cmwlth.2003). There a bill originally proposed amendments to an act that provided for DNA testing of certain convicted offenders and established a State DNA data bank. The bill ultimately was amended to codify that act as a new chapter of the Judicial Code and to amend Section 7102 of the Judicial Code, 42 Pa.C.S. § 7102, to provide generally that where liability is attributed to more than one defendant, each may be held liable only for damages equal to his proportion of the total liability. In that situation, where a previously stand-alone, uncodified enactment whose main purpose was to assist in the investigation and apprehension of criminals was incorporated into the Judicial Code and was combined in one bill with an amendment to a provision relating to joint and several liability in civil actions, the Court determined that, although the standard of having each subject be germane to the others is not a high one, the act did not satisfy it. The present case, by contrast, does not involve incorporation of a previously separate statute into the Judicial Code but rather several contemporaneous amendments relating primarily to the business of the courts. *See Ritter*.

Code, were germane to the original subject.

IV

 Petitioners further argue that the venue provisions of Act 127 violated Article V, Section 10(c) of the Constitution pertaining to the power of the Supreme Court to prescribe general procedural rules governing operation of the courts.[7] They argue first that the new venue rule, codified at 42 Pa.C.S. § 5101.1, is procedural in nature. They quote from *McGinley v. Scott*, 401 Pa. 310, 317, 164 A.2d 424, 428 (1960) (quoting *Hadlich v. American Mail Line*, 82 F.Supp. 562, 563 (N.D.Cal.1949)), among other cases:

> 'Essentially venue is an incident of procedure. It is part of that body of law which bounds and delineates the forum and the manner and mode of enforcing a litigant's rights. It is distinguishable from and is not within the field of law, known as substantive, which recognizes, creates and defines rights and liabilities and causes of action.'

Petitioners note that Section 5101.1(a) states directly that the purpose is to change venue requirements for medical professional liability actions and that Section 5101.1(b) makes the change, limiting venue in such cases to "the county in which the cause of action arose." This affects the procedure by which the rights of an individual claiming an injury due to medical negligence may be effectuated, but it does not create, define or regulate substantive rights.

In *In re 42 Pa.C.S. § 1703*, 482 Pa. 522, 534, 394 A.2d 444, 451 (1978), Petitioners emphasize, the Supreme Court declared unequivocally that "[t]he Pennsylvania Constitution grants the judiciary and the judiciary alone power over rule-making." There the legislature purported to define the Supreme Court as a covered agency subject to the provisions of the former act referred to as the Public Agency Open Meeting Law, Act of July 19, 1974, P.L. 486, *formerly* 65 P.S. §§ 261–269, repealed by Section 17 of the Act of July 3, 1986, P.L. 388. The court invoked a highly unusual procedure of publishing a letter of direct address to the Governor and the leaders of each House explaining the origins of the Supreme Court's rulemaking authority and its formal ratification in the 1968 Constitution, describing the exclusivity of that authority and its importance to the concept of separation of powers and declaring that Section 1703 was unconstitutional. Petitioners contend that inasmuch as the Supreme Court's power to establish procedural rules is exclusive and absolute, Section 5101.1 must be suspended.

The Commonwealth asserts that the legislature historically has acted to legislate in regard to venue. Sections 931(c) and 8523(a) of the Judicial Code, 42 Pa.C.S. §§ 931(c) and 8523(a), limit venue in ac-

---

7. Article V, Section 10(c) provides:

The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.

tions against Commonwealth parties to counties in which the principal or local office of the Commonwealth party is located or in which the cause of action arose, and these provisions appear not to have been challenged under Article V, Section 10(c). The Commonwealth agrees that the key to the separation of powers analysis is the demarcation between substantive laws, generally those defining and regulating rights, and procedural laws, which address methods by which rights are enforced. *See Morabito's Auto Sales v. Department of Transportation,* 552 Pa. 291, 715 A.2d 384 (1998).[8] The Commonwealth asserts that Act 127 similarly made a substantive modification to the venue statute.

In addition, the Commonwealth argues that Act 127 is consistent with the Pennsylvania Rules of Civil Procedure. It points out that on January 27, 2003 the Supreme Court modified Pa. R.C.P. No. 1006, relating to venue, by adding subdivision (a.1): "Except as otherwise provided by subdivision (c), a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose." The Note to this subdivision refers to Section 5101.1(c) of the Judicial Code for definitions of some of the terms. The Explanatory Comment—2003 to Rule 1006 refers to the enactment of Act 127 and notes changes in new subdivisions (c)(2) and (f)(2) to limit venue in cases involving joint and several liability or multiple causes of action in accordance with subdivision (a.1), and states that the new venue provision is to be made applicable to partnerships, unincorporated associations and corporations and similar entities as well.

Petitioners respond that the legislature may properly legislate in the area of venue in regard to suits against the Commonwealth because, as explained in *Lyles v. City of Philadelphia,* 9 Phila. 473 (C.P.Pa. 1983), Article V, Section 10(c) requires the rules promulgated to be consistent with the Constitution, and Article I, Section 11 expressly provides: "Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." They argue that cases or statutes dating from long before the adoption of Article V, Section 10(c) in 1968 are not relevant, and they assert that Act 127 remains unconstitutional regardless of the January 2003 Rules changes.

The Court agrees with Petitioners that venue in civil cases concerns a matter of pure procedure as stated in *McGinley* and numerous other cases cited by Petitioners. In the absence of a countervailing constitutional provision such as Article I, Section 11 authorizing the legislature to act in regard to venue in a particular area, the matter is committed to the exclusive authority of the Supreme Court under Article V, Section 10(c). *In re 42 Pa.C.S. § 1703.* Consequently, this Court must conclude that Act 127, insofar as it purported to alter the rules relating to venue in regard to medical professional liability actions generally, exceeded the authority of the legislature and therefore is unconstitutional.[9]

---

**8.** In *Commonwealth v. Morris,* 565 Pa. 1, 771 A.2d 721 (2001), the Supreme Court held in a challenge to Section 9545(c) of the Judicial Code, 42 Pa.C.S. § 9545(c), which limits the courts' powers to grant stays of execution, that the provision was not setting procedure by defining the appropriate circumstances for securing the substantive right of a stay.

**9.** The Court's determination renders moot Petitioners' contention in Count V of their complaint that the provisions violate the Fourteenth Amendment to the United States Constitution and Article I, Section 26 of the Pennsylvania Constitution.

Accordingly, the Court overrules the preliminary objections to the extent that the Commonwealth asserted that Petitioners lack standing; sustains the preliminary objections to the extent that the Commonwealth asserted that the enactment of Act 127 did not violate provisions of Article III of the Pennsylvania Constitution; and overrules the preliminary objection asserting that the enactment of Section 5101.1 of the Judicial Code and related provisions concerning venue in medical professional liability actions was not violative of the exclusive authority of the Supreme Court to prescribe general rules of procedure. The Commonwealth may file an answer to the petition for review. In addition, or in the alternative, either party may file an appropriate motion for summary relief under Pa. R.A.P. 1532(b).

### ORDER

AND NOW, this 18th day of June, 2003, the Court orders as follows:

The preliminary objection of the Commonwealth of Pennsylvania raising a question of standing is overruled.

The preliminary objections of the Commonwealth asserting failure to state a cause of action based upon a claimed violation of provisions of Article III of the Pennsylvania Constitution are sustained.

The preliminary objection of the Commonwealth asserting failure to state a cause of action based upon a violation of Article V, Section 10(c) of the Pennsylvania Constitution is overruled.

The Commonwealth is permitted to file an answer to the petition for review within thirty days of the date of this order; in the alternative either party may file a motion for summary relief pursuant to Pa. R.A.P. 1032(b).

### CONCURRING AND DISSENTING OPINION BY Judge PELLEGRINI.

While I agree with the majority's decision to overrule the Honorable C. Michael Weaver, Secretary of the Commonwealth and the Commonwealth of Pennsylvania's (collectively, Commonwealth) preliminary objections to North–Central Pennsylvania Trial Lawyers Association by John M. Humphrey, Esq., Trustee ad Litem and John M. Humphrey, Esq., Individually's (collectively, Petitioners) petition for review regarding the issue of standing, I disagree with the majority's decision to sustain the Commonwealth's preliminary objection relating to Article III, Section 3 of the Pennsylvania Constitution and to overrule its preliminary objection relating to Article V, Section 10(c) of the Pennsylvania Constitution.

Act 127 which was signed into law by the Governor on October 17, 2002, amended several sections of the Judicial Code, specifically, 42 Pa.C.S. §§ 4553 and 4561 (relating to compensation of multicounty investigating grand juries); §§ 931 and 5101.1 (relating to venue in medical liability actions) and §§ 5981, 9795.2, 9795.3 and 9799.1 (relating to protection of child victims/witnesses and Megan's Law). The title of the final version of Act 127 provided:

### AN ACT

Amending Title 42 (Judiciary and Judicial Procedure) of the Pennsylvania Consolidated Statutes, further providing for declaration of policy regarding child victims and witnesses, for original jurisdiction and venue of courts of common pleas, for expenses for investigating grand juries and trial and for compensation and travel allowance for jurors; providing for venue in medical professional liability actions; and further providing for registration procedures and

applicability, for sentencing court information and for duties of the Pennsylvania State Police.

Alleging that Act 127 violated numerous provisions of the Pennsylvania Constitution, Petitioners filed a petition for review in this Court's original jurisdiction seeking a declaratory judgment that the Act, as enacted, is unconstitutional and to enjoin its codification or enforcement. In response, the Commonwealth filed preliminary objections alleging that Petitioners failed to state a claim upon which relief could be granted.

## I.

Specifically, Petitioners alleged that Act 127 violated the single subject rule of Article III, Section 3 of the Pennsylvania Constitution.[1] In response to that allegation, the Commonwealth contends and the majority concludes that it does not violate that provision because the original bill and each of its amendments are related to aspects of the Judicial Code and the business of the courts.

Article III, Section 3 provides that "[n]o bill shall be passed containing *more than one subject,* which shall be clearly expressed in its title ..." (emphasis added). Generally referred to as the "single subject rule," this provision was added to eliminate omnibus bills intended to confuse and distract the legislators by jumbling together numerous incongruous subjects so that the real purpose of the bill was lost in the title of the bill. *See Common Cause of Pennsylvania v. Commonwealth of Pennsylvania,* 668 A.2d 190 (Pa.Cmwlth. 1995). As we stated most recently in *DeWeese v. Commonwealth of Pennsylvania,* 824 A.2d 364 (Pa.Cmwlth.2003):

Article III, Section 3 also bars legislative "logrolling," which is the practice of combining several legislative proposals, not one of which could pass on its own merits, into one bill. By combining the minorities who favor one of the bill's parts, a majority is obtained on all parts. The single subject rule also prevents the attachment of riders to popular bills that are certain of adoption. Such riders become law, not on their own merits, but on the strength of the bill to which they are attached. Finally, a bill addressing a single topic is deemed more likely to obtain a considered review than one addressing many. (Citations and footnotes omitted.)

Pursuant to Article III, Section 3, provisions which have no proper legislative relation to each other and are not part of the same legislative scheme may not be joined in the same act. *Stewart v. Hadley,* 327 Pa. 66, 193 A. 41 (1937). If, however, the subjects treated in a single enactment are so interrelated that they are all "germane" to the general subject of the act, there is no violation of Article III, Section 3. *Bridgeford v. Groh,* 102 Pa.Super. 138, 156 A. 612 (1931), *affirmed,* 305 Pa. 554, 158 A. 260 (1932).

In this case, Act 127 amended three aspects of the Judicial Code (1) it provided for compensation of multicounty investigating grand jurors; (2) it addressed venue in medical professional liability actions; and (3) it addressed policy regarding child victims and witnesses and amended registration procedures for offenders and sexually violent predators under Megan's Law.

---

1. Article III, Section 3 of the Pennsylvania Constitution provides:

 **Form of bills**

 No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

While the majority concludes that because all three amendments dealt with the Judicial Code, they have a "proper relation" such that inclusion of the three topics in one single act did not violate Article III, Section 3, the fact that the changes in substantive law effected by Act 127 were set forth as amendments to the Judicial Code does not, in and of itself, satisfy the requirements of Article III, Section 3. *See DeWeese.*

As to each of the individual amendments, I do not believe that a provision providing for compensation to multicounty investigating grand jurors, a provision governing the venue where a medical professional liability action and a provision which requires an offender or sexually violent predator to provide the Pennsylvania State Police with all information regarding his or her residence, employment or educational status can in any way be considered to have a proper relation to one another such that those provisions may be assembled together into one single act. As a common sense test, each of these items would have a separate interest group lobbying the General Assembly, evidencing that there is more than one substantive item in this bill.

Moreover, merely because two provisions fall within the boundaries of the Judicial Code or even the "business of the courts" does not alone establish that they address one single subject. If that were true, the General Assembly could enact one piece of legislation dealing with when a capital punishment sentence is to be imposed and the filing fees to be charged in various types of actions, provisions now in the Judicial Code. As can be seen while those provisions both deal with the "business of the courts," such an Act clearly would have more than one subject matter. However, I do not believe that we even reach that issue in this case because not all of the provisions of Act 127, specifically, the provision regarding mandatory reporting of information by sexual offenders and predators to the Pennsylvania State Police, relate to the "business of the courts" as the majority holds.

Accordingly, because I do not believe that Petitioners have failed to state a cause of action under Article III, Section 3, I would overrule the Commonwealth's preliminary objection to their claim under the single subject rule.

## II.

While I would overrule the Commonwealth's preliminary objection based on the single subject rule, I would, unlike the majority, sustain its preliminary objection regarding the venue provision of Act 127 that requires medical malpractice cases be brought only in the county in which the cause of action arose.[2] The majority overrules this preliminary objection, concluding

---

2. On January 27, 2003, our Supreme Court modified Pa. R.C.P. No. 1006, relating to venue, by adding subdivision (a.1), which provides: "[e]xcept as otherwise provided by subdivision (c), a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose." Because the Court has provided the same restriction on venue in medical professional liability cases as the General Assembly provided in the provision of Act 127 being challenged here, I believe any decision as to the constitutionality of that provision of Act 127 pursuant to Article V, Section 10(c) could be held in abeyance until the Supreme Court changes Pa. R.C.P. No. 1006 in a way that the venue provision relating to medical professional liability claims no longer exists. Because that is the basis for the majority's holding, I will address that issue also. The same is not true with the discussion of Article III, Section 3 because that is a procedural matter that has to be raised promptly after the passage of the contested statute. *See Stilp v. Hafer,* 553 Pa. 128, 718 A.2d 290 (1998).

that venue in civil cases concerns a matter of pure procedure, and in the absence of a countervailing constitutional provision authorizing the legislature to act in regard to venue in a particular area, the matter is within the exclusive authority of the Supreme Court under Article V, Section 10(c).[3] It does so relying on our Supreme Court's decision in *McGinley v. Scott,* 401 Pa. 310, 164 A.2d 424 (1960), where the Court concluded that venue is essentially an incident of procedure. However, *McGinley* is not controlling as to what procedure is within the meaning of Article V, Section 10(c) because it was decided prior to the adoption of that provision in 1968 and the constitutional implications of that term were not at issue.

Initially, it should be pointed out that Article V of the Pennsylvania Constitution does not vest total control in the Supreme Court of all matters relating to the operation of the courts or which courts have jurisdiction over certain matters[4] or, for that matter, what divisions of what courts have jurisdiction over certain matters.[5] Each of those provisions cited in the preceding footnotes gives the General Assembly power over matters involving organization and jurisdiction over the courts.

While I recognize that there is not a bright line between what is within the purview of the Supreme Court or the General Assembly, a close relationship exists between venue, i.e., the right of a party sued to have the action brought where there is some contact, and the responsibility of the General Assembly to allocate the resources of the Commonwealth to the various judicial districts, as well as its constitutional right to establish additional courts or divisions of existing courts and determine the jurisdiction of courts such that, in this instance, I would hold that it is within the power of the General Assembly to place restrictions on a party's choice of venue. Where an individual may choose to have his or her case heard directly affects the needs of a specific judicial district in that it allows individuals to forum shop for the best forum to hear his or her case based upon verdicts and awards in previous cases which are similar to their own case. As a result, certain judicial districts may be inundated with cases making it necessary to employ more judges to hear the cases, impacting both state and county

---

**3.** That section provides:

> The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions. Pa. Const. Art. V, § 10(c).

**4.** Article V, Section 5 of the Pennsylvania Constitution provides, in relevant part "[t]here shall be one court of common pleas for each judicial district (a) having such divisions and consisting of such number of judges **as shall be provided by law,** one of whom shall be the president judge; and (b) having unlimited original jurisdiction in all cases except **as may otherwise be provided by law."** (Emphasis added.)

**5.** Article V, Section 8 of the Pennsylvania Constitution provides "[t]he General Assembly may establish additional courts or divisions of existing courts, as needed, or abolish any statutory court or division thereof."

budgets. Not raised and, therefore, not answered in this case is whether the General Assembly has the power to create venue provisions for a particular class of litigation.

Due to the relationship between venue and the General Assembly's authority granted to it pursuant to the Pennsylvania Constitution, I believe that the venue provision of Act 127 falls within the purview of the General Assembly and, therefore, does not violate the separation of powers precepts of Article V, Section 10(c) of the Pennsylvania Constitution. Therefore, I would sustain the Commonwealth's preliminary objection as to that issue.

Judge LEADBETTER joins this dissent as to Article V, Section 10(c) only.