**MALT BEVERAGES DISTRIBUTORS ASSOCIATION, Petitioner**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2005.

Decided Aug. 18, 2005.

Robert B. Hoffman, Harrisburg, for petitioner.

Rodrigo J. Diaz, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, J., LEAVITT, J., and JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Malt Beverages Distributors Association (MBDA) petitions for review of a letter decision of the Pennsylvania Liquor Control Board (Board) that granted an application for a double transfer of an eating place malt beverage license from a bar and grill in Altoona to premises on which a Sheetz restaurant, convenience store and gas station operates and also denied the petition of MBDA to intervene. MBDA raises the following questions: whether the Board improperly denied MBDA's intervention as a representative of its members, when it showed sufficient harm from the license application and its members are within the group regulated or protected by the applicable statutory scheme, and whether the Board improperly failed to consider the issue raised by MBDA as to whether the proposed licensee meets the definition of "retail dispenser" in Section 102 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 1–102, when it will sell malt beverages for takeout and not for consumption on the premises.

I

Ohio Springs, Inc. (Applicant) is an entity related to Sheetz, Inc. (Sheetz). In January 2004 Applicant filed the application for a double transfer of Eating Place Malt License No. E–2397 from J.D. Beer Store, Inc. on Broad Avenue to Applicant's premises on Valley View Boulevard in Altoona. The Bureau of Licensing opposed the transfer, and a hearing was scheduled before a hearing examiner for June 30, 2004 to address nine issues, including whether those who filed petitions to intervene would be directly aggrieved by the granting of the license and whether an approval would adversely affect the health, welfare, peace and morals of the neighborhood within 500 feet of the proposed licensed premises.

The Board found that a new Sheetz convenience restaurant opened at the premises two weeks before the hearing. The facility is 10,000 square feet, about three times the size of the average Sheetz store. It has three kitchens, a serving area capable of seating sixty-two persons and an outdoor seating area for about forty-six persons. The restaurant has pizza, gelato, coffee, salads, carved sandwiches, desserts, other menu items and a bakery. The store is unlike other Sheetz stores in Pennsylvania. Applicant planned to operate a Sheetz convenience store in the same building, with no separation between it and the proposed licensed area. About seventy-five feet from the licensed premises are gasoline pumps for the Sheetz store. There is no physical separation, other than the parking lot, between the pumps and the building even though they occupy separate parcels. Applicant's establishment is open twenty-four hours a day, seven days a week.

Applicant proposes to sell beer for takeout only, with postings indicating that no beer is to be consumed on the premises. It plans to sell about fifty types of beer and a few malt-based coolers in six-packs, twelve-packs and forty-ounce bottles but not in single cans, and it will sell the beer Monday through Saturday 7:00 a.m. to 2:00 a.m. and Sunday 11:00 a.m. until 2:00 a.m. There are no other licensed establishments within 200 feet, and there are no restrictive institutions (church, hospital, charitable institution, school or public playground) within 300 feet. *See* Section 432

of the Liquor Code, 47 P.S. § 4–432, relating to malt and brewed beverages retail liquor licenses. The neighborhood in a radius of 500 feet is 95 percent commercial and 5 percent residential.

At the June 30, 2004 hearing before a Board hearing examiner, Mary Lou Hogan, counsel and executive secretary of MBDA, testified that MBDA is a trade association for Pennsylvania beer distributors. It has approximately 400 members throughout the state, including some in Blair County. MBDA promotes, protects and facilitates the interests of its members, and it filed its petition because it believes that the rules of selling beer in Pennsylvania will be drastically changed if the application is granted. Hogan stated that MBDA believes that if a convenience store such as Applicant is permitted to sell beer, it can compete with beer distributors because under Board rules such a seller may effectively sell a case at one time. She foresaw a devastating effect on members of the organization because they may sell only beer, soda and a limited number of other items, whereas a convenience store may sell many more items. Further, eating place malt beverage licensees are permitted to sell beer on Sunday with a Sunday permit, and beer distributors are not. Applicant would become, in effect, a distributor without any of the restrictions facing real distributors. A license granted to this Applicant would open the door to convenience store sales of beer elsewhere.

David Shipula, President of MBDA and the owner of a beer distributorship in Wilkes–Barre, testified that in his experience most "D Distributors," such as members of MBDA, sell almost exclusively to members of the general public. ID Importing Distributors, who import beer from breweries out of state, sell to taverns. Beer distributors are not permitted to hold more than one license. Shipula believed that convenience stores that sell beer would have an unfair advantage and that he would lose sales to impulse buyers at Sheetz.

The Board approved the application subject to certain conditions; it concluded that the premises qualified as an "eating place," which is defined in Section 102 of the Liquor Code as a "premise where food is regularly and customarily prepared and sold, having a total area of not less than three hundred square feet available to the public in one or more rooms ... and equipped with tables and chairs, including bar seats, accommodating thirty persons at one time." Under 40 Pa.Code § 3.52(b) a licensed premises may not have an inside passage or communication to or with any other business, and under 40 Pa.Code § 3.52(c) a licensee may not conduct another business on the premises without approval.

The Board imposed the condition that the business of convenience store be separated from the restaurant by a permanent partition at least four feet high or that the other business cease. Section 432(d) of the Liquor Code, 47 P.S. § 4–432(d), requires refusal of a license to a location where sale of liquid fuel or oil is conducted. Although Applicant contended that the sale of gasoline on a separate parcel was distinct, the Board found that the company that owns the pumps is connected to Sheetz and does not have separate employees on site, that video-monitoring of the gas pumps and transactions occurs inside the restaurant and that the entire property is a de facto single location for purposes of Section 432(d). The Board required Applicant to physically separate the gas pump area from the building in some manner before operating authority would be given.

Regarding the multiple petitions to intervene, the Board noted that under 40

Pa.Code § 17.11(a) a protest may be filed by another licensee within 200 feet, by a church, hospital, charitable institution, school or public playground within 300 feet, or by a resident of the neighborhood within 500 feet. Under 40 Pa.Code § 17.12(a) a "person who can demonstrate a direct interest in an application" for a new retail liquor license, retail malt or brewed beverage license, importing distributor or distributor license or for a transfer and "who can further demonstrate that a Board decision contrary to the person's direct interest will cause the person to be aggrieved may file a petition to intervene." Under Section 17.12(b), the Board may grant such an application in its discretion in whole or in part.

In denying MBDA's petition the Board cited *Application of El Rancho Grande, Inc.*, 496 Pa. 496, 437 A.2d 1150 (1981), and *Application of Family Style Restaurant, Inc.*, 503 Pa. 109, 468 A.2d 1088 (1983), where the Supreme Court held that local tavern owners' associations had no standing to appeal grants of retail licenses following challenges.[1] In *Application of El Rancho Grande*, involving a claimed resort area exception to the established quota of restaurant liquor licenses, the court noted that persons not entitled to file appeals to the court of common pleas under the Liquor Code may still have standing to appeal from a Board decision under Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702, if they are aggrieved by the decision. The court concluded that individual licensees had standing because they asserted an interest different from that common to all citizens but that the association, which did not appear at the hearing, lacked standing to appeal. In *Application of Family Style Restaurant*, also involving a claimed resort area exception, the court held that the association did not present evidence that it or its members would suffer direct, substantial and immediate harm and that the bare allegation of future economic injury was not enough.[2]

## II

All parties agree that MBDA does not fall under the terms of Section 464 of the Liquor Code, 47 P.S. § 4–464, which grant automatic standing to appeal to the court of common pleas. In *Burns v. Rebels, Inc.*, 779 A.2d 1245, 1249 (Pa.Cmwlth. 2001), the Court stated:

> Parties who do not have standing to intervene in a Board proceeding under Section 464 of the Liquor Code, but who will be aggrieved by an adverse Board decision, may nevertheless petition to

1. Petitions to intervene filed by the American Council of Christian Churches and Pastor Michael Brown were held to be untimely without any good cause shown. *See* 40 Pa.Code § 17.13(b). A resident who lives some ten blocks from the licensed premises acknowledged that a grant of the application would not affect him directly but rather would affect the Altoona area generally. The Board held that this did not rise to the level of a direct and substantial interest, citing *Tacony Civic Ass'n v. Pennsylvania Liquor Control Board*, 668 A.2d 584 (Pa.Cmwlth.1995). Pastor Gary Dull testified on behalf of Faith Baptist Church in Altoona and on behalf of thirty-one individuals who attended the hearing. He expressed general opposition to the concept of convenience store sale of alcohol, but the Board determined that he showed no direct and substantial and immediate interest in this particular application, and it denied intervention.

2. The Court's review of a decision of the Board as an administrative agency is limited to determining whether there was a constitutional violation or an error of law, whether the practices and procedures of the Board were followed and whether necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *see Burns v. Rebels, Inc.*, 779 A.2d 1245 (Pa.Cmwlth. 2001).

intervene in the proceeding under 40 Pa.Code § 17.12–17.13 and may appeal an adverse Board decision directly to this Court under Section 702 of the Administrative Agency Law, 2 Pa.C.S. § 702. *See In re Family Style Restaurant, Inc.*, 503 Pa. 109, 468 A.2d 1088 (1983). To satisfy the requirements of these sections, Petitioners must demonstrate that they are aggrieved; in other words, they must have a direct and substantial interest in the adjudication and must show a sufficiently close causal relation between the decision and their asserted injury to qualify their interest as immediate. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975).

The Court has stated further:

> An interest is "substantial" when there is a discernible adverse effect to an interest of the aggrieved individual that differs from the abstract interest of the public generally in having others comply with the law; it is "direct" when the aggrieved person can show a causal connection between the alleged harm to his or her interest and the matter complained of; and it is "immediate" when the causal connection is not too remote. *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975).

*North–Central Pennsylvania Trial Lawyers Ass'n v. Weaver*, 827 A.2d 550, 554 (Pa.Cmwlth.2003). Concerning the standing of an association, the Court has said:

> An association, as a representative of its members, may have standing to bring a cause of action even in the absence of injury to itself; the association must allege that at least one of its members is suffering immediate or threatened injury as a result of the challenged action. *Pennsylvania School Boards Ass'n v. Commonwealth Ass'n of School Admin-*

*istrators, Teamsters Local 502*, 696 A.2d 859 (Pa.Cmwlth.1997).

*Id.* In *North–Central Pennsylvania Trial Lawyers Ass'n* the Court concluded that the association had standing to challenge a statute that was intended to restrict the venues in which medical malpractice claims might be brought, where one attorney individually and members of the association who practiced medical malpractice law would be directly and substantially affected by the change in venue rules.

■ MBDA stresses that the Supreme Court has stated that "standing will be found more readily where protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved.'" *Wm. Penn Parking Garage*, 464 Pa. at 198, 346 A.2d at 284. Standing is conferred on persons who are "arguably within the zone of interests sought to be protected or regulated by the statute or constitutional guarantee in question." *Id.* at 198 n23, 346 A.2d at 284 n23. In *MEC Pennsylvania Racing, Inc. v. Pennsylvania State Horse Racing Commission*, 827 A.2d 580 (Pa.Cmwlth.2003), the Court held that an owner of racetracks, including one located very close to a newly approved racetrack, had standing to appeal where the commission found that the proposed racetrack would have a detrimental impact on the existing track and the appellant also demonstrated that development of a new racetrack in Erie would result in a direct dilution of attendance and revenue at its own racetracks.

MBDA notes that Hogan testified that there would be "catastrophic consequences," N.T at 85, to its members if the "niche" given by the Liquor Code to beer distributors in Pennsylvania to sell beer to the retail consumer were altered so that others such as Sheetz, with whom they cannot effectively compete, were able to do

so as well. She testified: "This Sheetz will affect distributors in Blair County." *Id.* at 95. She stated that there was a member retail distributor, Robert's Beverage, "across the road" from the Sheetz. *Id.* at 99. In addition, MBDA argues that the system for selling alcoholic beverages is highly regulated and interconnected, with restrictions on one class important to the functioning of the entire system and the authority granted to other classes. Hogan noted that MBDA had not participated in a license application proceeding in at least thirty years; however, this application involves potential approval of a new business model.

The Board in response first agrees that the standing referred to under 40 Pa.Code § 17.12 is equivalent to the "direct, substantial and immediate" test set forth by courts for appeals under 2 Pa.C.S. § 702. It emphasizes the Supreme Court's holdings in *Application of El Rancho Grande* and in *Application of Family Style Restaurant,* denying standing to the local tavern owners' association to appeal from grants of retail licenses due to the association's failure to show a direct, substantial and immediate interest. The Board asserts that MBDA's concerns do not overcome its lack of evidence of immediate harm to anyone.

■ The Court is persuaded that the Board's denial of MBDA's petition in the present case must be classified as an abuse of discretion and an error of law. First, even under the narrowest interpretation of association standing principles, MBDA presented evidence in the form of the testimony of Hogan and Shipula that retail sales of beer by this Sheetz store will be damaging to any nearby D distributorship because the Sheetz will offer many items that the distributor cannot offer, including food for consumption on the premises, gasoline and convenience store items. If beer for takeout is available as well, it will likely be purchased by customers who went there originally for some other purpose, thereby taking sales from distributors. Hogan testified that the results would likely be catastrophic for a nearby D distributor and that there was such a member distributor across the road from the Sheetz. An association need only allege that one member is suffering immediate or threatened injury. *North–Central Pennsylvania Trial Lawyers Ass'n.*[3]

More generally, however, the Court also agrees that the Board should have exercised its discretion to grant standing to MBDA because of the new and very different nature of the application. As MBDA points out, even in *Application of El Rancho Grande,* 496 Pa. at 508, 437 A.2d at 1156, the Supreme Court referred to a statement of the United States Supreme Court in *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184, 189 (1970), that where statutes are concerned "the trend is toward enlargement of the class of people who may protest administrative action." In *MEC Pennsylvania Racing* the applicable regulation permitted consideration of the best interests of horse racing generally, and the Horse Racing Commission concluded there that granting the application was in the best interest of racing. The Court stated that MEC had standing akin to that of the "local commu-

---

**3.** *See also American Booksellers Ass'n, Inc. v. Rendell,* 332 Pa.Super. 537, 481 A.2d 919 (1984), stating that if it is shown that an association's members, or any one of them, is suffering immediate or threatened harm and if the nature of the claim asserted and the relief sought does not render the participation of each injured party indispensable, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

nity" in *Cashdollar v. State Horse Racing Commission,* 143 Pa.Cmwlth. 650, 600 A.2d 646 (1991), which had standing to appeal where the statute required consideration of the public interest and the Court held that when an agency was directed in its enabling statute to consider the effect of its decision on a particular class of individuals, then they might have standing to challenge a decision on the ground that the agency did not fulfill its statutory duty.

With 400 beer distributor members, MBDA certainly is integrally involved in the regulated distribution of beer and malt beverages generally.[4] The Liquor Code created the D Distributor class and to some extent protects that class. A statewide trade association, such as MBDA, is likely much better suited than any individual distributor to represent the interests of the class when a proposal is made that has the potential to alter dramatically the current balance under applicable statutory provisions. Hogan stated that there is a quota system for D Distributors and that to the best of her knowledge there are no unused slots in Blair County.

■ MBDA originally asked the Court to remand this matter for the Board to consider an issue raised by MBDA but not addressed, i.e., whether Applicant met the definition of "retail dispenser" in Section 102 of the Liquor Code:

> "**Retail dispenser**" shall mean any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess of one hundred ninety-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof.

Testimony by Steven G. Sheetz confirmed that it was not part of Sheetz' business concept to allow consumption on the premises. Sheetz wanted to have beer only for takeout. MBDA interprets the definition of retail dispenser to mean that "consumption on the premises" is to be the dominant manner of sale and that sale for on-premises consumption is required for sale for off-premises consumption.

The Board in its brief suggests that this Court may decide this issue because MBDA participated fully in the hearing and facts necessary to decide the issue are not in dispute. In its reply brief MBDA concurs with the Board's request. Nevertheless, the Court is not persuaded that such would be the best course. The Court has ruled that the Board should have permitted intervention by MBDA and therefore that it should have considered the issue raised by MBDA. The Court accordingly concludes that this question of the interpretation of a technical definition in the Liquor Code and its application to the facts of this case should be made by the Board in the first instance, subject to the Court's review. Thus the Court shall reverse the Board's decision to deny MBDA's petition to intervene and shall remand this matter for a new decision addressing the issue that MBDA raised.

Judge McGINLEY and Judge COHN JUBELIRER did not participate in the decision in this case.

***ORDER***

AND NOW, this 18th day of August, 2005, the decision of the Pennsylvania Liquor Control Board is reversed insofar as it denied the petition for intervention of

---

4. Steven G. Sheetz' testimony that Sheetz sells beer for takeout in 87 of its 183 stores, Board Opinion, Findings Nos. 77 and 91, lends support to MBDA's inference that Sheetz would likely attempt to expand that aspect of its business in Pennsylvania.

the Malt Beverages Distributors Association, and this case is remanded to the Board for a new decision including a ruling on the issues raised and preserved by Malt Beverages Distributors.

Jurisdiction is relinquished.