## MALT BEVERAGES DISTRIBUTORS ASSOCIATION and Beer Super, Inc., Petitioners

v.

## PENNSYLVANIA LIQUOR CONTROL BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2008.

Decided March 2, 2009.

Robert B. Hoffman, Harrisburg, for petitioner.

Rodrigo J. Diaz, Executive Deputy Chief Counsel, Harrisburg, for respondent.

Robert J. O'Hara, III and Stanley J. Wolowski, Pittsburgh, for intervenor, Wegmans Food Markets, Inc.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge,[1] COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

In this appeal from an order of the Pennsylvania Liquor Control Board (PLCB), Malt Beverage Distributors Association (MBDA) and Beer Super, Inc. (Beer Super), ask whether the PLCB erred in granting Wegmans Food Markets, Inc.'s (Wegmans) application for a restaurant liquor license at its store in Wilkes–Barre, Pennsylvania. Essentially, MBDA argues the real seller of beer here is Wegmans' *supermarket*, and the notion that Wegmans' Market Café restaurant is actually the seller is merely a legal fiction. Wegmans asserts the PLCB erred in granting MBDA and Beer Super standing to intervene in the proceedings. Upon review, we affirm.

---

**1.** The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

## I. Background

In April 2007, Wegmans filed an application for the inter-municipal double transfer of Restaurant Liquor License No. R–14938 from Boscov's Department Store, LLC, 15 South Main Street, Wilkes–Barre, Pennsylvania, to itself, for the premises located at 220 Highland Park Boulevard, Wilkes–Barre, Pennsylvania. MBDA and Beer Super filed a joint motion to intervene in the licensure proceedings. Wegmans filed an answer, requesting the PLCB deny the motion to intervene.

The PLCB's Bureau of Licensing (Bureau) informed Wegmans it would conduct a hearing to take evidence regarding several objections by the Bureau, including:

1) The [PLCB] shall take evidence to determine if it should permit an interior connection to the unlicensed grocery store in accordance with Section 3.52(b) of the [PLCB's] Regulations.

2) The [PLCB] shall take evidence to determine whether it should permit [Wegmans] to operate another business on the licensed premises (the storage and preparation of food items for the unlicensed grocery store as well as grocery item sales), in accordance with Section 3.52(c) of the [PLCB's] Regulations.

3) The [PLCB] shall take evidence to determine if [Wegmans] will allow minors to frequent its licensed premises, in violation of Section 493(14) of the Liquor Code.[2]

4) The [PLCB] shall take evidence and hear argument on the issue of whether the Commonwealth Court decision in *Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board*, [918 A.2d 171 (Pa.Cmwlth.), *appeal*

---

**2.** Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. 4–493(14).

*granted,* 593 Pa. 413, 931 A.2d 626 (2007) ], and/or Section 3.52–3.54 of its Regulations, precludes an interior connection between a supermarket and a restaurant, notwithstanding the lack of reference to such a limitation in the Regulation and its predecessors, Regulation 103 and Regulation R–37–27 and further notwithstanding the [PLCBs] historical policy of approving such connections when appropriate. [*See* ] *Freedman v. Pennsylvania Liquor Control Board,* 20 Pa. D & C[.]2d 353 (1954). [*See also* ] *Tacony Civic Association v. Pennsylvania Liquor Control Board,* 668 A.2d 584 (Pa.Cmwlth.1995).

5) The [PLCB] shall take evidence and hear argument on the issue of whether the Commonwealth Court decision in *Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board,* [918 A.2d 171 (Pa.Cmwlth.), *appeal granted,* 593 Pa. 413, 931 A.2d 626 (2007) ], and/or Section 3.52–3.54 of its Regulations, imposes a limitation on the size of the unlicensed business, when compared to the size of the licensed business, notwithstanding the lack of reference to such a limitation in the Regulation and its predecessors, Regulation 103 and Regulation [R–]37–27 and further notwithstanding the [PLCBs] historical interpretation of the Regulations to allow an interior connection to other businesses such as department stores (Wanamakers and Boscovs).

6) The [PLCB] shall take evidence to determine if [MBDA] and [Beer Super], would be directly aggrieved by the granting of this application, which would qualify them as intervenors in this matter. *See In re Application of Family Style Restaurant, Inc.,* 503 Pa. 109, 468 A.2d 1088 (1983); *Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd.,* 881 A.2d 37 (Pa.Cmwlth.2005).

7) The [PLCB] shall take evidence to determine that the approval of this application will not adversely affect ... the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises....

PLCB Op., Finding of Fact (F.F.) No. 2. A hearing ensued before a PLCB hearing examiner.

After hearing,[3] the PLCB hearing examiner issued a recommended opinion in which he opined the PLCB should approve Wegmans' license transfer application. In addition, the hearing examiner opined MBDA and Beer Super would not be directly aggrieved if Wegmans obtained the requested license and, therefore, these entities should not be granted intervenor status.

The PLCB subsequently issued an order approving Wegmans' license application. The order indicated if an appeal was filed the PLCB would issue an opinion in support of its order. Wegmans filed three motions asking the PLCB to clarify and/or reconsider its order. Each motion focused on the standing of MBDA and Beer Super to intervene in the proceedings. Ultimately, the PLCB clarified its prior order, holding MBDA and Beer Super had standing and expressly granting these entities intervenor status. MBDA and Beer Super

---

**3.** Wegmans also filed license transfer applications for its Bethlehem, Williamsport, Dickson City/Scranton, State College and Easton locations. Within a six-week period, a PLCB hearing examiner conducted individual hearings for each of the various locations. At each hearing the parties presented testimony that was generally applicable to the issues surrounding Wegmans' applications. The parties proceeded before the PLCB hearing examiner by creating a single record applicable to all stores or any single store. However, the PLCB issued separate opinions for each individual location due to some site specific issues as well as specific geographic intervenors.

filed a petition for review to this Court, and the PLCB issued an opinion in support of its order.[4]

## II. PLCB's Opinion

### A. PLCB's Findings

The PLCB's opinion in support of its order approving Wegmans' license application contained 437 findings, which are summarized below.

In February 2007, Wilkes–Barre Township Council approved the transfer of Restaurant Liquor License No. R–14938 into the Township.

Gary Grochowski, a PLCB licensing investigator, testified concerning his investigation of Wegmans' inter-municipal double transfer application and the proposed interior connections. Grochowski testified that Wegmans' Wilkes–Barre location consists of a grocery store and the proposed licensed restaurant area. He explained the proposed licensed restaurant area is cafeteria-style and offers a wide array of food items. Grochowski testified the proposed licensed restaurant area, which would accommodate 136 customers, exceeded the minimum square footage required by PLCB regulations. Grochowski also testified there would be two interior openings that would lead customers from the unlicensed grocery store into the proposed licensed restaurant area. He further explained the grocery store and the restaurant area would be separated by four-foot divider walls. Grochowski testified Wegmans would store malt or brewed beverages in a lockable beer storage case located in the serving area of the proposed licensed restaurant. He also explained that customers would have to purchase malt or brewed beverages from a separate cash register located in the proposed licensed area. Grochowski testified the malt or brewed beverages would be available for consumption in single-serving containers and for takeout within the legally permissible quantities per transaction. He also explained the proposed licensed premises would not be within 200 feet of any other licensees or within 300 feet of any restrictive institutions.

The Bureau also presented evidence that the PLCB previously issued licenses to Boscov's, the transferor of the license at issue here, as well as John Wanamaker's and Wawa, Inc., all of which had restaurants with interior connections to retail stores.

MBDA presented the testimony of Mary Lou Hogan, MBDA's chief counsel and executive secretary. Hogan explained that MBDA is a trade association for malt beverage distributors in Pennsylvania, which is comprised of 430 members. Hogan testified that MBDA's basic concern with regard to Wegmans' application is the economic impact on distributors if a supermarket the size of Wegmans is permitted to sell beer. She testified MBDA believes the difference between Wegmans and a typical restaurant licensee is that customers who patronize Wegmans are there to buy grocery items, which beer distributors cannot sell. She further explained that Wegmans' customers would be able to purchase beer in direct competition with distributors. Hogan testified MBDA is concerned that, because Wegmans sells a multitude of grocery items, the sale of

---

4. Additionally, MBDA and various distributors filed petitions for review from PLCB orders approving Wegmans' license transfer applications for its stores in Williamsport (513 C.D.2008), Easton (514 C.D.2008), State College (516 C.D.2008), Bethlehem (517 C.D. 2008) and Dickson City/Scranton (518 C.D. 2008). Those matters were argued seriately with this case. Like the PLCB, we issue separate opinions for each transfer application.

beer at Wegmans could attract customers who might not otherwise be contemplating a beer purchase. Hogan further testified Wegmans would attract customers for take-out beer sales and distributors could not compete with that because distributors are required to sell beer by the case, while restaurants can sell beer in six-packs. Hogan further testified that if Wegmans obtained a restaurant liquor license many of its sales could come at the expense of distributors and, as a result, a number of area distributors would go out of business. Hogan noted there are thirty-three beer distributors and seven importing distributors in Luzerne County. Hogan explained the sale of beer by Wegmans would have a direct and indirect negative impact on all distributors in the state. Specifically, she explained, the direct impact would be for distributors in the immediate area of Wegmans, while the indirect impact would be as a result of other supermarkets across the state obtaining licenses to sell beer.

In addition to Hogan's testimony, David Shipula, the owner of Beer Super and MBDA's President, testified he owns a beer distributorship that is approximately one mile to one-and-a-half miles from Wegmans' Wilkes–Barre location. Shipula testified 85 to 90 percent of the products he sells are malt or brewed beverages. He explained if Wegmans obtained a license for its restaurant area, it would be in direct competition with Beer Super as a beer distributor. Shipula also testified there is nothing prohibiting Wegmans from changing the configuration of its restaurant area if it obtained the license and, therefore, it could ultimately function as a large takeout operation. Shipula testified if Wegmans operated as a large takeout operation he would be aggrieved because of the PLCB's restrictions on beer distributors. Shipula also explained Wegmans could afford to sell beer at a low cost because of the of the large number of

items it sells, while his distributorship could not afford to do so because of the restrictions on items that beer distributors can sell. Shipula testified that he was concerned that his regular customers would purchase at least some of the beer they usually buy from his distributorship from Wegmans. Shipula testified that he believed there is the potential to lose at least half of his customers if Wegmans began selling beer at its Wilkes–Barre location.

Wegmans presented the testimony of David DeMascole, its Regional Beverage Director for Pennsylvania and the general manager of its distribution center in Schuylkill County. As Regional Beverage Manager, DeMascole is responsible for coordinating the opening and introduction of beer sales in the restaurants in Wegmans' stores. DeMascole explained Wegmans began opening restaurants in the 1990s as a way to distinguish itself from other supermarkets and grow its business in the restaurant field. DeMascole explained, compared to large supermarket chains, Wegmans is a small regional chain and it needed to develop a niche, which it did by opening its restaurants over the past 15 years. DeMascole testified the food offered at Wegmans' restaurants is comparable to that served at restaurants such as T.G.I. Friday's or Applebee's, but that Wegmans is at a competitive disadvantage with such restaurants because of its inability to serve a glass of beer with a meal. DeMascole explained that Wegmans would sell beer for both on-site consumption and takeout, but it has not reached a conclusion as to the percentage of on-site consumption versus takeout sales. DeMascole further testified that on-premises consumption of beer would be limited to the licensed areas and only to those customers who purchased meals from the restaurant area. DeMascole also

testified, unlike its stores in other states, Wegmans does not anticipate impulse purchases of beer in its Pennsylvania stores because the beer would only be located in the restaurant area of the store, which is not an area that all customers frequent.

Wegmans also presented the testimony of Keith Grierson, the store manager of its Wilkes–Barre location, who is familiar with the store layout and all operational aspects. Grierson testified Wegmans' Wilkes–Barre location, which opened around 1994, operates a restaurant under the same roof as the supermarket and that the restaurant opened at the same time as the supermarket. Grierson testified the restaurant area has a separate ingress/egress so that customers can enter/exit the restaurant without traveling through the grocery store. Grierson testified the licensed restaurant portion of Wegmans' Wilkes–Barre location would sell beer in bottles and cans in six-packs, either for on-premises consumption or takeout. Grierson explained customers would be able to select beer from lockable coolers in the licensed restaurant area, and they would have to purchase the beer at a register within the licensed area. He testified that customers who purchased a six-pack from the licensed area could take the beer into the licensed grocery store and continue to shop for groceries. Grierson further testified there would be 20 to 40 people working in the licensed area and the area would be constantly supervised by staff and management.

Wegmans also presented the testimony of Thomas J. Shepstone, an urban planner, who performed a market study at Wegmans' request. Shepstone testified Wegmans is pursuing its business model of niche marketing, particularly with regard to its sale of prepared foods. Shepstone testified he did not believe there would be a negative impact on any beer distributors

if Wegmans began selling beer in its restaurants. He explained that, as compared to other supermarkets, Wegmans is more aptly characterized as a "destination," i.e., a store that customers would travel further to reach than a typical grocery store. Shepstone opined other businesses, including beer distributors, near Wegmans actually benefit from their location because Wegmans draws customers to the area that would not otherwise be there. Shepstone also opined it is unlikely that Wegmans' sale of beer would generate many new customers for Wegmans; rather, the sale of beer would primarily serve existing customers. Shepstone also examined the location of Wegmans' Wilkes–Barre store in relation to Shipula's Beer Super distributorship, which is approximately 1.4 miles from Wegmans' Wilkes–Barre store. Shepstone also considered all the distributors he believed were in reasonable proximity of five miles of Wegmans' Wilkes–Barre location. Shepstone opined that Shipula's Beer Super Distributorship would not suffer if Wegmans obtained the requested liquor license. As an anecdotal example to support this conclusion he noted that a nearby deli, which holds a restaurant liquor license, is located in the same strip mall as a beer distributor. Shepstone further opined, based on Wegmans' Wilkes–Barre location, the location of other nearby major retailers and traffic patterns in the area, that the area is a "power center," which generates circular traffic flows that benefit all area businesses.

Wegmans also presented the testimony of John Rowland Dunham, an economist, who performed an analysis of whether beer sales by Wegmans would have a significant negative impact on beer distributors. Dunham opined neither MBDA nor any individual distributors would be harmed as a result of Wegmans' beer sales and, in his opinion, they may actually benefit. Dunham testified, in his years

of experience studying retail establishments, he found that similar retail establishments often locate together to enhance all of their businesses. Dunham testified Wegmans is beneficial to nearby businesses based in part on the economic benefit of "clustering," which occurs when retail establishments are located very close to one another. Dunham explained the benefit to other distributors of Wegmans being located near them is Wegmans attracts a large number of customers because it is more than a grocery store, but rather it is a "destination retailer." Dunham further testified sales of cases of beer and six-packs are two different businesses that cater to different customer bases. He opined Wegmans would not adversely impact distributors, in part, because Wegmans would be limited to selling two six-packs per transaction while distributors sell in much greater quantity. Dunham also agreed with Shepstone's testimony that Wegmans would attract few new customers through the sale of beer.[5] Dunham further opined, based on the testimony of MBDA's witnesses and his own research, he has seen nothing to indicate if Wegmans obtained a liquor license for its Wilkes–Barre location that it would detrimentally affect Beer Super of any other distributor in Luzerne County.

In order to rebut the testimony of Wegmans' experts that more competition helps all businesses, MBDA presented the testimony of Matthew Weinstein, an attorney specializing primarily in retail shopping center development, leasing and financing. He testified that contrary to the testimony of Wegmans' experts, "real world" commercial tenants do not seek to "cluster" or "co-locate" around similar businesses. To that end, Weinstein testified regarding

various use restrictions and restrictive covenants commonly placed in commercial leases that are used to deter direct competition between retail tenants. In addition, MBDA presented the testimony of Lee Goldstein, the owner of several strip malls and the operator of a real estate management company. Goldstein generally agreed with Weinstein's testimony regarding commercial leasing.

## B. PLCB's Analysis

Based on its findings, the PLCB issued an analysis concerning the objections to Wegmans' license transfer application.

As to the issue of standing, the PLCB determined MBDA and Beer Super would be directly aggrieved by the approval of Wegmans license transfer application, and, therefore, they were entitled to intervenor status. The PLCB relied on this Courts decision in *Malt Beverage Distributors Ass'n v. Pennsylvania Liquor Control Board (Sheetz I )*, 881 A.2d 37 (Pa.Cmwlth. 2005), *appeal denied,* 586 Pa. 775, 895 A.2d 1264 (2006), where we determined MBDA had standing to intervene in proceedings in which the operator of a Sheetz convenience store sought an "eating place" malt beverage license in order to sell beer for takeout in connection with its "new Sheetz convenience restaurant." *Id.* at 38.

The PLCB also considered whether it should approve an interior connection between the licensed premises and the unlicensed grocery store. It noted that Section 3.52(b) of its regulations provides, "Licensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons *except as approved by the [PLCB]."* 40 Pa.Code 3.52(b) (emphasis added). The PLCB noted it previously

---

5.  Wegmans also presented the testimony of its Regional Loss Prevention Manager, Carl Phillips, who testified concerning the safeguards and policies Wegmans would implement in connection with its proposed sale of beer.

approved interior connections similar to the one at issue here at stores such as Boscovs, John Wanamakers, and Wawa. The PLCB also determined that, based on evidence regarding the layout of Wegmans Market Café in relation to the unlicensed grocery store area, there was no reason not to approve the proposed interior connection. It noted the proposed licensed area would be clearly separated from the unlicensed portions of the premises by four-foot high barriers. The PLCB further determined Wegmans proposal fully complied with the requirements set forth in Sections 3.52–3.54 of the PLCBs regulations, 40 Pa.Code 3.52–3.54. Also, it determined this Courts decision in *Malt Beverage Distributors Ass'n v. Pennsylvania Liquor Control Board (Sheetz II)*, 918 A.2d 171 (Pa.Cmwlth.) (*en banc*), *appeal granted*, 593 Pa. 414, 931 A.2d 626 (2007), did not preclude the proposed interior connection between the licensed premises and the unlicensed grocery store. Finally, the PLCB determined that approval of Wegmans application would not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.

Based on these findings and determinations, the PLCB approved the application for double transfer of Restaurant Liquor License No. R–14938.[6] This matter is now before the Court for disposition.[7]

## III. Standing

As an initial matter, Wegmans argues the PLCB erred in granting MBDA and Beer Super standing as intervenors in the licensure proceedings before the PLCB.

In the companion case of *Malt Beverage Distributors Ass'n & Tanczos Beverages, Inc. v. Pennsylvania Liquor Control Board (Bethlehem Wegmans)*, 965 A.2d 1254 (Pa.Cmwlth, No. 517 C.D.2008, filed February 23, 2009), we rejected Wegmans' argument that the PLCB erred in granting MBDA and Tanczos Beverages, Inc. (an MBDA member distributor) standing to intervene in these licensure proceedings. In short, we held the PLCB properly determined this Court's prior decision in *Sheetz I* controlled this issue and, therefore, the PLCB properly determined MBDA and Tanczos had standing to intervene in the licensure proceedings for Wegmans' Bethlehem store. Consistent with our holding in *Bethlehem Wegmans*, we discern no error in the PLCB's decision to grant MBDA and Beer Super standing to intervene in the licensure proceedings in this matter.

## IV. Merits

As to the merits, MBDA and Beer Super advance several arguments in support of their general contention that the PLCB erred in approving Wegmans' application for the double transfer of Restaurant Liquor License No. R–14938.

In *Bethlehem Wegmans*, we rejected MBDA's assertions that the PLCB erred in granting Wegmans' application for the transfer of a restaurant liquor license to its Bethlehem location. First, we pointed out that MBDA did not dispute that Wegmans'

---

**6.** Shortly after MBDA and Beer Super filed their petition for review with this Court, MBDA and Beer Super filed a motion asking this Court to stay beer sales by Wegmans. Ultimately, a single judge of this Court quashed the motion filed by MBDA and Beer Super.

**7.** Our review of a decision of the PLCB as an administrative agency is limited to determining whether there was a constitutional violation or an error of law, whether the practices and procedures of the PLCB were followed and whether necessary findings of fact were supported by substantial evidence in the record. *Sheetz I.*

Market Café satisfied the statutory "restaurant" definition set forth in Section 102 of the Liquor Code, 47 P.S. § 1–102. Next, we stated the PLCB did not err in its interpretation of the PLCB regulations governing interior connections between licensed premises and other businesses. *See* 40 Pa.Code §§ 3.52–3.54. In addition, we determined the PLCB properly applied these regulations to the facts presented concerning Wegmans' proposed operation of its licensed restaurant and the unlicensed grocery store. Finally, we determined the authority cited by MBDA, *Sheetz II* and *Pennsylvania Liquor Control Board v. Ripley,* 107 Pa.Cmwlth. 425, 529 A.2d 39 (1987), did not compel the conclusion that the PLCB erred in granting Wegmans' application for a restaurant liquor license for its Bethlehem location with the proposed interior connection between the licensed restaurant and the unlicensed grocery store. Consequently, we held the PLCB properly approved Wegmans' license transfer application.

In accord with our decision in *Bethlehem Wegmans,* which is controlling here, we affirm the order of the PLCB granting Wegmans' request for the double transfer of Restaurant Liquor License R–14938 for its Wilkes–Barre location.

Judge McGINLEY did not participate in the decision in this case.

### ORDER

AND NOW, this 2nd day of March, 2009, the order of the Pennsylvania Liquor Control Board is **AFFIRMED.**