**MALT BEVERAGES DISTRIBUTORS ASSOCIATION and K.E. Pletcher, Inc., Petitioners**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2008.

Decided March 2, 2009.

Robert B. Hoffman, Harrisburg, for petitioner.

Rodrigo J. Diaz, Executive Deputy Chief Counsel, Harrisburg, for respondent.

Robert J. O'Hara, III and Stanley J. Wolowski, Pittsburgh, for intervenor, Wegmans Food Markets, Inc.

BEFORE: LEADBETTER, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge,[1] COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

In this appeal from an order of the Pennsylvania Liquor Control Board (PLCB), Malt Beverage Distributors Association (MBDA) and K.E. Pletcher, Inc. (K.E. Pletcher) ask whether the PLCB erred in granting Wegmans Food Markets, Inc.'s (Wegmans) application for a restaurant liquor license at its store in State College, Pennsylvania. Essentially, MBDA argues the real seller of beer here is Wegmans' *supermarket,* and the notion that Wegmans' Market Café restaurant is actually the seller is merely a legal fiction. Wegmans asserts the PLCB erred in granting MBDA standing to intervene in the proceedings. Upon review, we affirm.

## I. Background

In February 2007, Wegmans filed an application for the inter-municipal double transfer of Restaurant Liquor License No. R–11694 from W.U. Enterprises, Inc., t/a Dreamers Pub, 112–114 East Pine Street, Philipsburg, Pennsylvania, to itself, for the premises located at 345 Colonnade Way, Patton Township, State College, Pennsylvania. MBDA and K.E. Pletcher filed a joint motion to intervene in the licensure

proceedings. Wegmans filed an answer, requesting the PLCB deny the motion to intervene.

The PLCB's Bureau of Licensing (Bureau) informed Wegmans it would conduct a hearing to take evidence regarding several objections by the Bureau, including:

1) The [PLCB] shall take evidence to determine if it should permit an interior connection to the unlicensed grocery store in accordance with Section 3.52(b) of the [PLCB's] Regulations.

2) The [PLCB] shall take evidence to determine whether it should permit [Wegmans] to operate another business on the licensed premises (the storage and preparation of food items for the unlicensed grocery store as well as grocery item sales), in accordance with Section 3.52(c) of the [PLCB's] Regulations.

3) The [PLCB] shall take evidence to determine if [Wegmans] will allow minors to frequent its licensed premises, in violation of Section 493(14) of the Liquor Code.[2]

\* \* \* \*

8) The [PLCB] shall take evidence and hear argument on the issue of whether the Commonwealth Court decision in *Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board,* [918 A.2d 171 (Pa.Cmwlth.), *appeal granted,* 593 Pa. 413, 931 A.2d 626 (2007) ], and/or Section 3.52–3.54 of its Regulations, precludes an interior connection between a supermarket and a restaurant, [notwithstanding] the lack of reference to such a limitation in the Regulation and its predecessors, Regulation 103 and Regulation R–37–27 and

---

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

2. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–493(14).

further notwithstanding the [PLCB's] historical policy of approving such connections when appropriate. [See] Freedman v. Pennsylvania Liquor Control Board, 20 Pa. D & C[.]2d 353 (1954). [See also] Tacony Civic Association v. Pennsylvania Liquor Control Board, 668 A.2d 584 (Pa.Cmwlth.1995).

9) The [PLCB] shall take evidence and hear argument on the issue of whether the Commonwealth Court decision in Malt Beverage Distributors Association v. Pennsylvania Liquor Control Board, [918 A.2d 171 (Pa.Cmwlth.), appeal granted, 593 Pa. 413, 931 A.2d 626 (2007)], and/or Section 3.52–3.54 of its Regulations, imposes a limitation on the size of the unlicensed business, when compared to the size of the licensed business, notwithstanding the lack of reference to such a limitation in the Regulation and its predecessors, Regulation 103 and Regulation R–37–27 and further notwithstanding the [PLCB's] historical interpretation of the Regulations to allow an interior connection to other businesses such as department stores (Wanamaker's and Boscov's).

10) The [PLCB] shall take evidence to determine if [MBDA] and [K.E. Pletcher] has a valid reason for filing the petition-to-intervene late and if valid, how they would be directly aggrieved by the granting of this application, which would qualify them as intervenors in this matter. See In re Application of Family Style Restaurant, Inc., 503 Pa. 109, 468 A.2d 1088 (1983); Malt Beverage

Distributors Association v. Pennsylvania Liquor Control Bd., 881 A.2d 37 (Pa.Cmwlth.2005).

11) The [PLCB] shall take evidence to determine that the approval of this application will not adversely affect ... the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises....

PLCB Op., Finding of Fact (F.F.) No. 2. A hearing ensued before a PLCB hearing examiner.

After hearing,[3] the PLCB hearing examiner issued a recommended opinion in which he opined the PLCB should approve Wegmans' license transfer application. In addition, the hearing examiner opined MBDA and K.E. Pletcher would not be directly aggrieved if Wegmans obtained the requested license and, therefore, these entities should not be granted intervenor status.

The PLCB subsequently issued an order approving Wegmans' license application. The order indicated if an appeal was filed the PLCB would issue an opinion in support of its order. Wegmans filed three motions asking the PLCB to clarify and/or reconsider its order. Each motion focused on the standing of MBDA and K.E. Pletcher to intervene in the proceedings. Ultimately, the PLCB clarified its prior order, holding MBDA and K.E. Pletcher had standing and expressly granting these entities intervenor status. MBDA and K.E. Pletcher filed a petition for review to this Court, and the PLCB issued an opinion in support of its order.[4]

---

3. Wegmans also filed license transfer applications for its Bethlehem, Williamsport, Dickson City/Scranton, Wilkes–Barre and Easton locations. Within a six-week period, a PLCB hearing examiner conducted individual hearings for each of the various locations. At each hearing the parties presented testimony that was generally applicable to the issues surrounding Wegmans' applications. The

parties proceeded before the PLCB hearing examiner by creating a single record applicable to all stores or any single store. However, the PLCB issued separate opinions for each individual location due to some site specific issues as well as specific geographic intervenors.

4. Additionally, MBDA and various distributors filed petitions for review from PLCB or-

## II. PLCB's Opinion

### A. PLCB's Findings

The PLCB's opinion in support of its order approving Wegmans' license application contained 470 findings, which are summarized below.

In November 2006, the Patton Township Board of Supervisors, by resolution, approved the transfer of Restaurant Liquor License No. R–11694 into the Township from the Borough of Philipsburg.

Michael Spahr, a Bureau licensing analyst in the PLCB's central regional office, testified concerning his investigation of Wegmans' inter-municipal double transfer application and the proposed interior connections. Spahr testified Wegmans' State College location consists of a one-story frame brick building that houses a grocery store and a Market Café, which is a cafeteria-style restaurant. Spahr explained the proposed licensed restaurant area has nine serving areas and has seating for 276 patrons. He further testified the restaurant area exceeds the PLCB's minimum square footage requirement. Spahr also testified there are two public interior connections between the proposed licensed area and the grocery store area. Spahr explained Wegmans would separate the licensed restaurant area from the grocery store with divider walls. Spahr testified Wegmans would serve malt or brewed beverages in the restaurant area for on-premises consumption and for takeout. He explained Wegmans would install coolers for malt or brewed beverages in the licensed area. Spahr also testified the proposed licensed premises would not be within 200 feet of

any other licensees or within 300 feet of any restrictive institutions.

The Bureau also presented evidence that the PLCB previously issued licenses to Boscov's, John Wanamaker's and Wawa, Inc., all of which had restaurants with interior connections to retail stores.

MBDA presented the testimony of Mary Lou Hogan, MBDA's chief counsel and executive secretary. Hogan explained that MBDA is a trade association for malt beverage distributors in Pennsylvania, which is comprised of 430 members. Hogan testified that MBDA's basic concern with regard to Wegmans' application is the economic impact on distributors if a supermarket the size of Wegmans is permitted to sell beer. She testified MBDA believes the difference between Wegmans and a typical restaurant licensee is that customers who patronize Wegmans are there to buy grocery items, which beer distributors cannot sell. She further explained that Wegmans' customers would be able to purchase beer in direct competition with distributors. Hogan testified MBDA is concerned that, because Wegmans sells a multitude of grocery items, the sale of beer at Wegmans could attract customers who might not otherwise be contemplating a beer purchase. Hogan further testified Wegmans would attract customers for take-out beer sales and distributors could not compete with that because distributors are required to sell beer by the case, while restaurants can sell beer in six-packs. Hogan further testified if Wegmans obtained a restaurant liquor license many of its sales could come at the expense of distributors and, as a result, a number of area distributors would go out of business.

ders approving Wegmans' license transfer applications for its stores in Williamsport (513 C.D.2008), Easton (514 C.D.2008), Wilkes–Barre (515 C.D.2008), Bethlehem (517 C.D. 2008) and Dickson City/Scranton (518 C.D.

2008). Those matters were argued seriately with this case. Like the PLCB, we issue separate opinions for each transfer application.

Hogan noted there are two distributors and five importing distributors in Centre County. Hogan explained the sale of beer by Wegmans would have a direct and indirect negative impact on all distributors in the state. Specifically, she explained, the direct impact would be for distributors in the immediate area of Wegmans, while the indirect impact would be as a result of other supermarkets across the state obtaining licenses to sell beer.

In addition to Hogan's testimony, Paul Pletcher, a member of MBDA, and the owner of K.E. Pletcher, which holds an importing distributorship license, testified his distributorship is located about two to three miles from Wegmans' State College store. Pletcher testified greater than 95 percent of the products he sells are malt or brewed beverages. He testified he is concerned about the impact on his business if Wegmans is permitted to sell beer through its restaurant as proposed. Pletcher explained he is concerned that Wegmans would impact the pricing of malt or brewed beverages because Wegmans has numerous other items it can sell below cost to draw more customers. He testified, unlike Wegmans, he cannot sell beer at or below cost because it represents the vast majority of his sales. Pletcher further testified he is concerned because Wegmans' supermarket is connected to the restaurant area where beer would be sold. He testified that buying weekly groceries and picking up a six-pack of beer before checking out is not a "typical restaurant experience." F.F. No. 140. Pletcher also testified that if Wegmans obtained a liquor license, that sets precedent for other grocery stores to acquire licenses, and, if that occurred, he would experience a decrease of at least 50 percent in his retail sales. Pletcher testified if Wegmans alone obtained a license he anticipates a 10 to 15 percent decrease in his retail sales. He explained, if Wegmans obtained the license, he would suffer a loss of business because customers who purchase groceries at Wegmans would also purchase beer there rather than traveling to Pletcher's distributorship.

Wegmans presented the testimony of David DeMascole, its Regional Beverage Director for Pennsylvania and the general manager of its distribution center in Schuylkill County. As Regional Beverage Manager, DeMascole is responsible for coordinating the opening and introduction of beer sales in the restaurants in Wegmans' stores. DeMascole explained Wegmans began opening restaurants in the 1990s as a way to distinguish itself from other supermarkets and grow its business in the restaurant field. DeMascole explained, compared to large supermarket chains, Wegmans is a small regional chain and it needed to develop a niche, which it did by opening its restaurants over the past 15 years. DeMascole testified the food offered at Wegmans' restaurants is comparable to that served at restaurants such as T.G.I. Friday's or Applebee's, but that Wegmans is at a competitive disadvantage with such restaurants because of its inability to serve a glass of beer with a meal. DeMascole explained that Wegmans would sell beer for both on-site consumption and takeout, but it has not reached a conclusion as to the percentage of on-site consumption versus takeout sales. DeMascole further testified that on-premises consumption of beer would be limited to the licensed areas and only to those customers who purchased meals from the restaurant area. DeMascole also testified, unlike its stores in other states, Wegmans does not anticipate impulse purchases of beer in its Pennsylvania stores because the beer would only be located in the restaurant area of the store, which is not an area that all customers frequent.

Wegmans also presented the testimony of Steven A. Gallucci, the store manager of its State College location, who is familiar with the store layout and all operational aspects. Gallucci testified Wegmans' State College location, which opened in 2002, operates a restaurant under the same roof as the supermarket and that the restaurant opened at the same time as the supermarket. Gallucci testified the restaurant area has a separate ingress/egress so that customers can enter/exit the restaurant without traveling through the grocery store. Gallucci testified the licensed restaurant portion of Wegmans' State College location would sell beer in individual bottles and cans, and in six-packs, either for takeout or for on-premises consumption for those customers consuming a meal at the restaurant. Gallucci explained customers would be able to select beer from lockable coolers in the licensed restaurant area, and they would have to purchase the beer at a register within the licensed area. He testified customers who purchase a six-pack from the licensed area could take the beer into the licensed grocery store and continue to shop for groceries. Gallucci further testified there would be 20 to 50 people working in the licensed area and the area would be constantly supervised by staff and management.

Wegmans also presented the testimony of Thomas J. Shepstone, an urban planner, who performed a market study at Wegmans' request. Shepstone testified Wegmans is pursuing its business model of niche marketing, particularly with regard to its sale of prepared foods. Shepstone testified he did not believe there would be a negative impact on any beer distributors if Wegmans began selling beer in its restaurants. He explained that, as compared to other supermarkets, Wegmans is more aptly characterized as a "destination," i.e., a store that customers would travel further to reach than a typical grocery store.

Shepstone opined other businesses, including beer distributors, near Wegmans actually benefit from their location because Wegmans draws customers to the area that would not otherwise be there. Shepstone also opined it is unlikely that Wegmans' sale of beer would generate many new customers for Wegmans; rather, the sale of beer would primarily serve existing customers. Shepstone also examined the location of Wegmans' State College store in relation to K.E. Pletcher, as well as other licensed businesses in the area. In addition, he considered geography, topography, roadways and traffic patterns in the area. Shepstone opined Wegmans sale of beer "would not have a negative impact on the area because the entire around [Wegmans] and [K.E. Pletcher] is booming[,][and][i]t will only see further growth." F.F. No. 348.

Wegmans also presented the testimony of John Rowland Dunham, an economist, who performed an analysis of whether beer sales by Wegmans would have a significant negative impact on beer distributors. Dunham opined neither MBDA nor any individual distributors would be harmed as a result of Wegmans' beer sales and, in his opinion, they may actually benefit. Dunham testified, in his years of experience studying retail establishments, he found similar retail establishments often locate together to enhance all of their businesses. Dunham testified Wegmans is beneficial to nearby businesses based in part on the economic benefit of "clustering," which occurs when retail establishments are located very close to one another. Dunham explained the benefit to other distributors of being located near Wegmans is that Wegmans attracts a large number of customers because it is more than a grocery store, but rather it is a "destination retailer." He testified that, because Wegmans is a destination retailer,

other retailers and service businesses in the area benefit from the customers drawn by Wegmans. Dunham further testified sales of cases of beer and six-packs are two different businesses that cater to different customer bases. He opined Wegmans would not adversely impact distributors, in part, because Wegmans would be limited to selling two six-packs per transaction while distributors sell in much greater quantity. Dunham also agreed with Shepstone's testimony that Wegmans would attract few new customers through the sale of beer.[5] Based on an economic analysis he conducted concerning the effect of Wegmans' beer sales in Centre County, Dunham opined K.E. Pletcher would not suffer financially if Wegmans obtained the requested license. He further opined K.E. Pletcher may actually benefit from Wegmans' sale of beer sales because beer sales would simply better serve Wegmans' customers, and nearby businesses such as K.E. Pletcher would benefit from the increased traffic.

In order to rebut the testimony of Wegmans' experts that more competition helps all businesses, MBDA presented the testimony of Matthew Weinstein, an attorney specializing primarily in retail shopping center development, leasing and financing. He testified that contrary to the testimony of Wegmans' experts, "real world" commercial tenants do not seek to "cluster" or "co-locate" around similar businesses. To that end, Weinstein testified regarding various use restrictions and restrictive covenants commonly placed in commercial leases that are used to deter direct competition between retail tenants. In addition, MBDA presented the testimony of Lee Goldstein, the owner of several strip malls and the operator of a real estate management company. Goldstein generally agreed with Weinstein's testimony regarding commercial leasing.

### B. PLCB's Analysis

Based on its findings, the PLCB issued an analysis concerning the objections to Wegmans' license transfer application.

As to the issue of standing, the PLCB determined MBDA and K.E. Pletcher would be directly aggrieved by the approval of Wegmans' license transfer application, and, therefore, they were entitled to intervenor status. The PLCB relied on this Court's decision in *Malt Beverage Distributors Ass'n v. Pennsylvania Liquor Control Board* (*Sheetz I*), 881 A.2d 37 (Pa.Cmwlth.2005), *appeal denied,* 586 Pa. 775, 895 A.2d 1264 (2006), where we determined MBDA had standing to intervene in proceedings in which the operator of a Sheetz convenience store sought an "eating place" malt beverage license in order to sell beer for takeout in connection with its "new Sheetz convenience restaurant." *Id.* at 38.

The PLCB also considered whether it should approve an interior connection between the licensed premises and the unlicensed grocery store. It noted that Section 3.52(b) of its regulations provides, "Licensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons *except as approved by the [PLCB].*" 40 Pa.Code § 3.52(b) (emphasis added). The PLCB noted it previously approved interior connections similar to the one at issue here at stores such as Boscov's, John Wanamaker's, and Wawa. The PLCB also determined that, based on evidence regarding the layout of Wegman's Market Café in relation to the unli-

---

**5.** Wegmans also presented the testimony of its Regional Loss Prevention Manager, Carl Phillips, who testified concerning the safeguards and policies Wegmans would implement in connection with its proposed sale of beer.

censed grocery store area, there was no reason not to approve the proposed interior connection. It noted the proposed licensed area would be clearly separated from the unlicensed portions of the premises by four-foot high barriers. The PLCB further determined Wegmans' proposal fully complied with the requirements set forth in Sections 3.52–3.54 of the PLCB's regulations, 40 Pa.Code §§ 3.52–3.54. Also, it determined this Court's decision in *Malt Beverage Distributors Ass'n v. Pennsylvania Liquor Control Board (Sheetz II)*, 918 A.2d 171 (Pa. Cmwlth.) *(en banc)*, *appeal granted*, 593 Pa. 414, 931 A.2d 626 (2007), did not preclude the proposed interior connection between the licensed premises and the unlicensed grocery store. Finally, the PLCB determined that approval of Wegmans' application would not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.

Based on these findings and determinations, the PLCB approved the application for double transfer of Restaurant Liquor License No. R–11694.[6] This matter is now before the Court for disposition.[7]

### III. Standing

■ As an initial matter, Wegmans argues the PLCB erred in granting MBDA and K.E. Pletcher standing as intervenors in the licensure proceedings before the PLCB.

In the companion case of *Malt Beverage Distributors Ass'n & Tanczos Beverages, Inc. v. Pennsylvania Liquor Control Board (Bethlehem Wegmans)*, 965 A.2d 1254 (Pa. Cmwlth, No. 517 C.D.2008, filed February 23, 2009), we rejected Wegmans' argument that the PLCB erred in granting MBDA and Tanczos Beverages, Inc. (an MBDA member distributor) standing to intervene in these licensure proceedings. In short, we held the PLCB properly determined this Court's prior decision in *Sheetz I* controlled this issue and, therefore, the PLCB properly determined MBDA and Tanczos had standing to intervene in the licensure proceedings for Wegmans' Bethlehem store. Consistent with our holding in *Bethlehem Wegmans*, we discern no error in the PLCB's decision to grant MBDA and K.E. Pletcher standing to intervene in the licensure proceedings in this matter.

### IV. Merits

As to the merits, MBDA and K.E. Pletcher advance several arguments in support of their general contention that the PLCB erred in approving Wegmans' application for the double transfer of Restaurant Liquor License No. R–11694.

■ In *Bethlehem Wegmans*, we rejected MBDA's assertions that the PLCB erred in granting Wegmans' application for the transfer of a restaurant liquor license to its Bethlehem location. First, we pointed out that MBDA did not dispute that Wegmans' Market Café satisfied the statutory "restaurant" definition set forth in Section 102 of the Liquor Code, 47 P.S. § 1–102. Next, we stated the PLCB did not err in its interpretation of the PLCB

---

**6.** Shortly after MBDA filed its petition for review with this Court, MBDA and K.E. Pletcher filed a motion asking this Court to stay beer sales by Wegmans. Ultimately, a single judge of this Court quashed the motion filed by MBDA and K.E. Pletcher.

**7.** Our review of a decision of the PLCB as an administrative agency is limited to determining whether there was a constitutional violation or an error of law, whether the practices and procedures of the PLCB were followed and whether necessary findings of fact were supported by substantial evidence in the record. *Sheetz I.*

regulations governing interior connections between licensed premises and other businesses. *See* 40 Pa.Code §§ 3.52–3.54. In addition, we determined the PLCB properly applied these regulations to the facts presented concerning Wegmans' proposed operation of its licensed restaurant and the unlicensed grocery store. Finally, we determined the authority cited by MBDA, *Sheetz II* and *Pennsylvania Liquor Control Board v. Ripley,* 107 Pa.Cmwlth. 425, 529 A.2d 39 (1987), did not compel the conclusion that the PLCB erred in granting Wegmans' application for a restaurant liquor license for its Bethlehem location with the proposed interior connection between the licensed restaurant and the unlicensed grocery store. Consequently, we held the PLCB properly approved Wegmans' license transfer application.

In accord with our decision in *Bethlehem Wegmans,* which is controlling here, we affirm the order of the PLCB granting Wegmans' request for the double transfer of Restaurant Liquor License No. R–11694 for its State College location.

Judge McGINLEY did not participate in the decision in this case.

### ORDER

AND NOW, this 2nd day of March, 2009, the order of the Pennsylvania Liquor Control Board is **AFFIRMED.**